**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2010

No. 09-70026

Lyle W. Cayce
Clerk

JOHN LEZELL BALENTINE,

Petitioner - Appellant

v.

RICK THALER, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

ON PETITION FOR REHEARING
(Opinion June 18, 2010, 5th Cir., 2010_____F.3d _____)

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

No judge in active service on this court requested that the court be polled in response to the petition for rehearing en banc. The petition is denied. The petition for rehearing by the panel is GRANTED. The prior opinion is withdrawn, and this opinion is substituted.

John Lezell Balentine, a Texas prisoner sentenced to death, appeals the district court's denial of his Rule 60(b) motion to set aside that court's 2009 judgment. We initially held his arguments to be valid. *Balentine v. Thaler*, 609

No. 09-70026

F.3d 729 (5th Cir. 2010). On rehearing, we conclude that a ruling by the Texas Court of Criminal Appeals should not be presumed to have reached the merits of his claims. The claims are procedurally defaulted and cannot be considered. We AFFIRM the district court's refusal to set aside its earlier denial of relief.

## PROCEDURAL HISTORY

Balentine confessed that on January 21, 1998, in Amarillo, Texas, he murdered three teenagers, Mark Caylor, Jr., Kai Geyer, and Steven Brady Watson. The details of the crime are set out in *Balentine v. State*, 71 S.W.3d 763, 767-68 (Tex. Crim. App. 2002).

We summarize the proceedings that have led to today's appeal.

A. *Trial, Sentencing, and Direct Appeal*

In April 1999, a jury found Balentine guilty of capital murder and sentenced him to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence on April 3, 2002. *Id*. at 774.

B. *First State Habeas Application*

Balentine filed a state post-conviction application for writ of habeas corpus on January 22, 2001, which was before the proceedings on the direct appeal were final. Twenty-one grounds for relief were stated, the first fourteen challenging the constitutionality of the Texas death penalty scheme. The only identified issue concerning sentencing was that counsel was ineffective by not presenting any evidence at the sentencing phase. The state district court denied relief on October 18, 2002. The Court of Criminal Appeals, after adopting the trial judge's findings and conclusions, denied relief on December 4, 2002. *Ex parte Balentine*, No. WR-54,071-01 (Tex. Crim. App. Dec. 4, 2002) (not designated for publication).

C. *First Federal Habeas Application*

Balentine filed an application for writ of habeas corpus in the United States District Court for the Northern District of Texas on December 1, 2003,

2

No. 09-70026

then filed an amended application on August 19, 2004. *See* 28 U.S.C. § 2254. He alleged nine grounds of error, including a denial of a right to individualized sentencing under the Eighth Amendment. The crux of such a claim is that a defendant did not receive an individualized sentence because no mitigating evidence was presented at trial. *See Lockett v. Ohio*, 438 U.S. 586 (1978). After securing new counsel, Balentine detailed – for the first time in any court – the mitigation evidence that could have been presented had there been proper investigation. That evidence included affidavits by family members and experts. The magistrate judge issued a Report and Recommendation finding Balentine not entitled to relief because the claims relating to mitigating evidence were unexhausted and procedurally barred.

Balentine objected to the Report and Recommendation on December 21, 2007. He also requested that the district court stay the proceedings so he could return to state court to exhaust the mitigating evidence claims. The district court denied the request on March 31, 2008. Also on March 31, 2008, and then on reconsideration on May 30, 2008, the district court overruled all objections, adopted the findings of the Report and Recommendation, and denied the petition.

Balentine appealed to this court. We affirmed on April 13, 2009. *Balentine v. Quarterman*, 324 F. App'x 304 (5th Cir.), *cert. denied*, 130 S. Ct. 484 (2009).

D. *Subsequent State Habeas Application*

On August 21, 2009, Balentine filed a subsequent habeas application in state court pursuant to Section 5 of Texas Code of Criminal Procedure Article 11.071. He alleged that he was deprived of his Sixth Amendment right to effective assistance when his trial counsel did not investigate, develop, or present mitigation evidence in the punishment phase of the trial. *See Wiggins v. Smith*, 539 U.S. 510 (2003). He also alleged a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The Court of Criminal Appeals dismissed the application. *Ex parte*

3

No. 09-70026

*Balentine*, Nos. WR-54071-01, WR-54071-02, 2009 WL 3042425 (Tex. Crim. App. Sept. 22, 2009).

E. *Motion for Rule 60(b) Relief from the Federal Court Judgment*

The day after the Court of Criminal Appeals' ruling, Balentine returned to federal district court and filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(5) and (6).  The judgments from which relief was sought were those of March and May 2008, denying his Section 2254 claims. Balentine argued that the Court of Criminal Appeals' September 22, 2009 dismissal of his application did not constitute an independent and adequate state law ground that would bar review by the federal court.  He requested an evidentiary hearing on the merits of his claim that counsel had been ineffective by failing to search adequately for mitigating evidence.

On September 28, 2009, the district court denied relief from judgment and stay of execution.  The court rejected Balentine's argument that the Court of Criminal Appeals' decision of September 22, 2009 had invalidated the district court's 2008 ruling that an unexhausted claim of ineffective assistance of counsel was procedurally barred.  The district court found that the Court of Criminal Appeals had not ruled on the merits of the claim on September 22, 2009, and the claim therefore remained beyond the federal court's review.

The district court granted a certificate of appealability, finding that jurists of reason could disagree on that court's interpretation of two Fifth Circuit precedents, namely, *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007), and *Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008). We then granted a stay of execution.   Balentine now claims that a proper analysis of the two cited precedents would lead to the conclusion that the Court of Criminal Appeals reached the merits of his ineffective assistance of counsel claim.  Therefore, he argues, the ineffective assistance of counsel claim is no longer procedurally defaulted, and the federal courts should review it on the merits.

No. 09-70026

DISCUSSION

This appeal is from the district court's denial of a motion under Rule 60(b)(5) and (6). Those sections are broadly worded:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(5)-(6). We have described this Rule as a powerful one:

> Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, [but] we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present.

*Batts v. Tow-Motor Forklift Co.,* 66 F.3d 743, 747 (5th Cir. 1995) (citations and internal quotation marks omitted).

The part of Rule 60(b)(5) relevant to our case is that equity should prevent some part of the earlier judgment from applying. Balentine's arguments under Rule 60(b)(6) also focus on equity. We will analyze the subparts together and often refer to them as Rule 60(b). The equitable power of the district court judge is to be exercised with discretion, while our appellate examination is for whether the discretion was abused. *Dunn v. Cockrell*, 302 F.3d 491, 492 (5th Cir. 2002).

As was revealed by our recounting of the procedural history of Balentine's post-conviction filings, his initial, unsuccessful federal petition for review of his conviction was brought in 2003. A state prisoner is not entitled to use Rule 60(b) as a broad opening for a second request in the federal court to overturn his conviction. Still, a Rule 60(b) motion, filed several years after an inmate's Section 2254 application had been denied, is in some circumstances an available option.

No. 09-70026

*Gonzalez v. Crosby*, 545 U.S. 524, 528-29 (2005).  A Rule 60(b) motion should be denied if it challenges on the merits an earlier denial of habeas relief.  *Id*. at 532. Conversely, a Rule 60(b) motion that raises procedural error in the previous federal court ruling may have merit:

> When no "claim" is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application. If neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules.

*Id*. at 533 (footnote omitted).

Accordingly, to succeed on his Rule 60(b) motion, Balentine can not make a "claim," *i.e.*, he must not be challenging a prior merits-based ruling.  He needed to show "that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar."  *Id*. at 532 n.4.

The single appellate issue stated in Balentine's brief is that the district court abused its discretion in denying the Rule 60(b) motion.  The sole argument to support that there was an errant exercise of discretion is that the district court failed to recognize that the latest Court of Criminal Appeals decision should be interpreted as having ruled on the merits of his *Wiggins* claim.

Balentine's brief does not then make an explicit connection between the district court's most recent and allegedly erroneous ruling and the *Crosby-*required procedural error in the earlier habeas application.  To open the Rule 60(b) door on a claim such as this, there must be a showing of a non-merits-based defect in the district court's earlier decision on the federal habeas petition:

> If neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as

6

denominated creates no inconsistency with the habeas statute or rules. Petitioner's motion in the present case, which alleges that the federal courts misapplied the federal statute of limitations set out in § 2244(d), fits this description.

*Crosby*, 545 U.S. at 533.

A fair reading of Balentine's argument is that the district court's 2008 decision, which found the *Wiggins* claim to be unexhausted and therefore not to be considered, was reached only after the denial of Balentine's motion to stay a decision on the *Wiggins* claim until he could return to state court and present it. In one of our key relevant precedents, we held that the denial of a stay in the initial federal habeas proceedings, which would have allowed the petitioner to exhaust his claim, could be the source for *Crosby* error. *Ruiz*, 504 F.3d at 526. The district court in *Ruiz* had held, when rejecting the Section 2254 application, that a stay and a return to state court would be futile because the claim had not been exhausted the first time. *Id.* Futile or not, Ruiz returned to state court and got a ruling from the Court of Criminal Appeals that we construed as merits-based. *Id.* at 525. As the *Ruiz* opinion put it, this merits ruling "pulled the ground from under the federal district court's earlier judgment dismissing the claim and refusing to hold the federal claim in abeyance while Ruiz returned to state court with his unexhausted claim." *Id.*

Like Ruiz, Balentine requested a stay of the federal proceedings so he could return to state court to exhaust the ineffective assistance claim. Such a stay was denied in 2008. If Balentine actually got a later ruling on the merits from the Court of Criminal Appeals on his *Wiggins* claim, *Ruiz* would be authority supporting his argument that it was error not to grant the Rule 60(b) motion.

On appeal here, Balentine analyzes whether the Texas court reached the merits or used an independent and adequate state ground to deny habeas relief. He argues that Texas incorporates federal law in its analysis of subsequent habeas applications and that this court considers the Texas law to be interwoven

7

with federal law. He then closes his argument with explanations of why the *Hughes* and *Ruiz* opinions of this court require reversal.

The State of Texas argues that Balentine did not present a *Wiggins* claim in his initial federal habeas petition and instead raised it in federal court for the first time in his Rule 60(b) motion. We turn our attention to that argument first and find it to be unconvincing. We then address Balentine's claims of error. They also do not convince.

A. *The* Wiggins *Claim and Balentine's Section 2254 Petition*

The relief that is available under Rule 60(b) in habeas proceedings must be granted consistently with the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Ruiz*, 504 F.3d at 526; 28 U.S.C. § 2244(b). The Supreme Court has described how AEDPA and Rule 60(b) motions operate in harmony. *See Crosby*, 545 U.S. 524. Under AEDPA, any successive habeas claim "that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence." *Id*. at 530.

Balentine alleges that he received ineffective assistance of counsel, in violation of his rights under the Sixth Amendment, when his trial counsel failed to investigate mitigating evidence for the sentencing phase of his trial. *See Wiggins*, 539 U.S. 510. The State argues that Balentine's initial federal habeas application never raised a Sixth Amendment claim for counsel's failure to investigate mitigating evidence. If that is so, then Balentine's Rule 60(b) motion raised a new claim that constitutes a successive habeas application barred by AEDPA. *See* 28 U.S.C. § 2244(b)(2). Consequently, whether AEDPA requires dismissal of Balentine's Rule 60(b) motion in part depends on when the issue of ineffective assistance for failure to investigate mitigating evidence was first presented in earlier proceedings.

No. 09-70026

A claim of ineffective assistance of counsel for failure to investigate mitigation evidence was not raised on direct appeal. Nor was a claim of failure to *investigate* mitigation evidence presented in the state habeas application that was filed in 2002. Instead, the initial state habeas application made a weak assertion of a failure to *present* mitigation evidence.

We now look for whether Balentine raised the *Wiggins* claim in his federal habeas petition, filed in 2003 and amended in 2004. The State contends that Balentine's federal habeas petition did not state a Sixth Amendment claim of ineffective assistance for counsel's failure to investigate and present mitigating evidence. Rather, the State asserts that any claim regarding mitigation was an Eighth and Fourteenth Amendment challenge.

The relevant section of Balentine's federal habeas application was titled "Ground Eight (IAC – *Lockett* Doctrine & Risk Assessment): Balentine was denied his federal Eighth and Fourteenth [A]mendment rights to individualized sentencing. Trial counsel failed to present any evidence at all in the punishment phase." The application explained that "IAC" means "ineffective assistance of counsel." Balentine claimed that, among other defaults, counsel "failed altogether to adequately investigate and develop any mitigation and risk assessment evidence at all." *Wiggins* was cited to support the arguments regarding the need for a reasonable investigation for mitigation evidence. The application then stated that such "deficient performance of trial counsel raises a reasonable probability that the outcome would have been different" and cited the Sixth and Fourteenth Amendments and *Strickland v. Washington*, 466 U.S. 668 (1984).

The general rule is that arguments not raised before the district court are waived on appeal. *State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir. 2009). Errant headings in briefs, though, do not waive arguments. Balentine raised a Sixth Amendment argument. Both the magistrate judge and this court ruled on it. *See Belt v. EmCare, Inc.*, 444 F.3d 403, 409 (5th Cir. 2006)

9

(holding that an issue is preserved for appeal where "the issue was sufficiently raised for the court to rule on it. . . .").

Balentine's claim was for ineffective assistance of counsel. The title of the section in the brief contained the acronym for ineffective assistance of counsel and stated that "counsel failed to present any evidence at all in the punishment phase." Additionally, Balentine presented his argument in terms of *Strickland v. Washington* and *Wiggins v. Smith*, both Sixth Amendment ineffective assistance of counsel cases. Further, the section's subheadings tracked the two-prong test for ineffective assistance of counsel. Subheading two was titled "Trial counsel's performance was deficient" and subheading three was titled "The deficient performance raises a reasonable probability that the outcome would have been different." The magistrate judge properly recognized the claim as an ineffective assistance of counsel claim and ruled on it, and on appeal this court considered the claim to be one for ineffective assistance. *Balentine*, 324 F. App'x at 305.

Thus, Balentine's federal habeas application stated a Sixth Amendment ineffective assistance of counsel claim, and the Rule 60(b) motion does not present a new habeas claim barred by AEDPA.

B. *Independent and Adequate State Ground Methodology*

Balentine argues that the Texas Court of Criminal Appeals in 2009 reached the merits of the claim and did not simply rule that the habeas application was procedurally flawed. This distinction matters in a Section 2254 proceeding because we do not reach the merits when the state court denied relief due to an adequate state law basis for the decision, independent of the merits of the federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). The Supreme Court has held that if the state court decision rests "primarily on federal law" or the state and federal law are "interwoven," and if "the adequacy and independence of any possible state law ground is not clear from the face of the opinion," then we should construe the state

No. 09-70026

court ruling as one applying federal law. *Ruiz*, 504 F.3d at 527 (quoting *Michigan v. Long,* 463 U.S. 1032, 1040-41 (1983)). On the other hand, when "it does not fairly appear that the state court rested its decision primarily on federal grounds, it is simply not true that the 'most reasonable explanation' is that the state judgment rested on federal grounds." *Coleman*, 501 U.S. at 737 (quoting *Long*, 463 U.S. at 1041).

This court has had to apply these rules when reviewing state court orders that were dismissed without clear explanation of the reason for the dismissal. *See, e.g.*, *Ruiz*, 504 F.3d at 527-28; *Hughes*, 530 F.3d at 341-42. In those cases, as here, the Texas Court of Criminal Appeals dismissed a subsequent habeas application with a boilerplate order that did not indicate whether the decision turned on a state procedural bar or on an assessment of the federal merits.

A Texas state prisoner seeking relief from the death penalty has a limited right to have a subsequent application for habeas relief considered in state court.

> If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a).

11

The determination of whether these requirements are satisfied is for the Texas Court of Criminal Appeals, not for a Texas trial court. *Id.* § 5(c). The application may be filed in the court of conviction, but the clerk of that court is to send the application to the Court of Criminal Appeals. *Id.* § 5(b).

The next section of Article 11.071 addresses the situation in which the requirements are found to be satisfied. "If the convicting court receives notice that the requirements of Section 5 for consideration of a subsequent application have been met, a writ of habeas corpus, returnable to the court of criminal appeals, shall issue by operation of law." *Id.* § 6(b). Only then is the State required to file an answer to the application. *Id.* § 7(a). Thus, the Court of Criminal Appeals determines without briefing by the State whether the Section 5(a) requirements have been met.

In practice, the Court of Criminal Appeals, after determining that a prisoner's subsequent habeas application satisfies Section 5(a)(1), (2), or (3), often remands the case to the trial court for fact findings. *See Ex parte Alexander*, No. WR-57156-02, 2010 WL 2524572, at *1 (Tex. Crim. App. June 16, 2010); *Ex parte Rachal*, No. WR-60394-02, 2009 WL 3042631, at *1 (Tex. Crim. App. Sept. 23, 2009). The Court of Criminal Appeals then reviews the trial court's findings and makes a ruling on the underlying constitutional claim. *See Ex parte Tercero*, No. WR-62593-03, 2010 WL 724405, at *1 (Tex. Crim. App. Mar. 3, 2010); *Ex parte Cockrell*, No. AP-76168, 2009 WL 1636528, at *1 (Tex. Crim. App. June 10, 2009). On occasion, though, the Court of Criminal Appeals makes a merits ruling without remand. *See Ex parte Buntion*, No. AP-76236, 2009 WL 3154909, at*1-2 (Tex. Crim. App. Sept. 30, 2009).

On August 21, 2009, Balentine filed a subsequent habeas application. In a two-page order, the Court of Criminal Appeals first summarized the prior proceedings. It then addressed the most recent filing:

No. 09-70026

> Applicant presents two allegations in his application.  In the first allegation, applicant asserts that he was deprived of his Sixth Amendment right to effective assistance of trial counsel because counsel failed to adequately investigate, develop, and present mitigation evidence in the punishment phase of the trial.  In his second allegation, applicant asserts that the prosecution unconstitutionally exercised peremptory challenges on two venire persons in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  We have reviewed the application and find that his allegations fail to satisfy the requirements of Article 11.071 § 5.  Accordingly, applicant's application is dismissed, and his motion to stay his execution is denied.  Likewise, applicant's motion to vacate the judgment rendered in his initial state writ application is denied, and the Court otherwise declines to reconsider that case.

*Ex parte Balentine*, Nos. WR-54071-01, WR-54071-02, 2009 WL 3042425, at *1 (Tex. Crim. App. Sept. 22, 2009).

The order does not explain the basis for the Court of Criminal Appeals' decision.  In our withdrawn opinion, we held the order's lack of an explanation had to be understood in the context of that court's prior caselaw.  That caselaw caused us to presume that the Court of Criminal Appeals reached the federal merits of the application.  We now hold *Coleman* demands a different outcome.

The reason for our new decision will be better understood in the context of certain Supreme Court precedents.  The decisions endeavored to address a problem federal courts frequently face when reviewing state court dismissal orders: determining whether an order rested on independent and adequate state grounds or instead reached the federal merits.  If a decision rests on state substantive or procedural law, federal courts are not permitted to second-guess the decision.  *See Coleman*, 501 U.S. at 729.  But, if the state court's reasoning was based upon its conclusions about the federal claims, then federal courts can make their own assessment of those merits.  *Id.*

When both grounds are present, the Supreme Court presented a standard for federal courts to apply when assessing whether a state court decision rested

13

on federal law or on independent and adequate state grounds. *See Long*, 463 U.S. at 1040-41. When

> a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Id.* Applying this presumption, federal courts avoid deciding "cases where there is an adequate and independent state ground" for the decision. *Id.* at 1040.

Prior to *Long*, the Court dealt with cases "that involve[d] possible adequate and independent state grounds" in a variety of unsatisfying ways. *Id.* at 1039. The Court previously dismissed cases that were unclear or simply vacated or continued cases to "obtain clarification about the nature of a state court decision." *Id.* Another manner of analysis the Court sought to discontinue with *Long* was "examining state law . . . because it requires us to interpret state laws with which we are generally unfamiliar. . . ." *Id.* The new approach is intended to keep federal courts from interpreting state law when analyzing a state court order for adequate and independent grounds, allowing for clarification of the state law only in "certain circumstances." *Id.* at 1041 n.6.

The Supreme Court's opinion in *Long* was on direct review of the Michigan Supreme Court's reversal of the conviction. Later, the same presumption was held to apply when a federal court reviews a state inmate's habeas petition challenging his conviction. *Harris v. Reed*, 489 U.S. 255 (1989). *Harris* was interpreted by some later courts to require application of the *Long* presumption to cases in which the state court failed to make clear a state procedural ground for its ruling. *Coleman*, 501 U.S. at 735. Two years after *Harris*, the Supreme Court provided some clarification. *Id.* "A predicate to the application of the *Harris* presumption is that the decision of the last state court to which the petitioner

presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." *Id.*

In *Coleman*, the Court reviewed an ambiguous state court dismissal. *See id.* at 727-29. Roger Coleman, convicted of rape and capital murder in Virginia, exhausted his direct state court appeals in 1983. *Id.* at 726-27. He filed a habeas petition in a state trial court. *Id.* at 727. After that court denied his claims, he appealed to the Virginia Supreme Court. *Id.* The State of Virginia filed a motion to dismiss, contending Coleman's appeal could not be considered because his notice of appeal was not timely filed. *Id.* Both parties filed briefs on the motion to dismiss and on the merits of Coleman's claims; the Virginia Supreme Court issued a brief order dismissing the appeal. *Id.* The order noted that Coleman filed a petition for appeal on December 4, 1986. It then stated:

> Thereupon came the appellee, by the Attorney General of Virginia, and filed a motion to dismiss the petition for appeal; on December 19, 1986 the appellant filed a memorandum in opposition to the motion to dismiss; on December 19, 1986 the appellee filed a reply to the appellant's memorandum; on December 23, 1986 the appellee filed a brief in opposition to the petition for appeal; on December 23, 1986 the appellant filed a surreply in opposition to the appellee's motion to dismiss; and on January 6, 1987 the appellant filed a reply brief.
>
> Upon consideration whereof, the motion to dismiss is granted and the petition for appeal is dismissed.

*Id.* at 727-28.

Coleman then turned to federal court. The district court and the Fourth Circuit denied relief. *Id.* at 728-29. At the Supreme Court, Coleman argued that "the presumption of *Long* and *Harris* applies in this case and precludes a bar to habeas because the Virginia Supreme Court's order dismissing [his] appeal did not 'clearly and expressly' state that it was based on state procedural grounds." *Id.* at 735. He sought creation of "a conclusive presumption of no independent and

adequate state grounds in every case in which a state prisoner presented his federal claims to a state court, regardless of whether it fairly appears that the state court addressed those claims." *Id*. at 737-38.

The Supreme Court rejected this argument. Coleman's proposed rule would result in federal courts reviewing the constitutional merits of state prisoners' claims even when independent and adequate state grounds should have barred their consideration. *Id*. at 738.

After the Court declined Coleman's invitation to extend the *Long* presumption to all state habeas corpus petitions asserting federal claims, it also declined to create a presumption in cases where a state court order did not plainly rest on federal grounds. *See id*. at 739-40. It stated that "in the rest of the cases" – that is, those cases where a state court judgment does not rest primarily on federal grounds or is not interwoven with federal law – "there is little need for a conclusive presumption." *Id*. at 739. "In the absence of a clear indication that a state court rested its decision on federal law, a federal court's task will not be difficult." *Id*. at 739-40.

The Supreme Court then undertook the task of determining the basis for the state court's ruling as to Coleman. The Virginia Supreme Court had granted the state's motion to dismiss without explaining the court's reasons. *Id*. at 727-28. The state's motion, though, raised only the fact that Coleman's notice of appeal was untimely. *Id*. at 727, 740. The Virginia Supreme Court made "no mention of federal law" in its brief dismissal order. *Id*. at 740. Based on this evidence from the state court record, the decision fairly appeared to be based primarily upon state procedural grounds. *Id*. at 740, 744.

As just noted, the *Coleman* court considered the Virginia Supreme Court order to be uninformative. Conversely, our initial opinion in the present appeal held the Court of Criminal Appeals' order that denied Balentine's subsequent application was informative. The information was not in the order itself but came

16

No. 09-70026

from the context in which its words were to be read, which was an earlier decision by the Texas Court of Criminal Appeals that explained how it resolved whether a subsequent application satisfied Section 5(a)(1) of Article 11.071. The Texas court's explanation was this:

> 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence.

*Ex parte Campbell,* 226 S.W.3d 418, 421 (Tex. Crim. App. 2007) (discussed in *Ruiz*, 504 F.3d at 527). The court held that a sufficient showing of unavailability was made. *Id*. at 422. The subsequent application then faced one more hurdle:

> Applicant also must jump over the rest of the section 5(a)(1) bar. That is, his application must allege sufficient specific facts that, if proven, establish a federal constitutional violation sufficiently serious as to likely require relief from his conviction or sentence.

*Id*. at 422. The court concluded that because no *prima facie* case of a constitutional violation was shown, Campbell failed to meet the second element of this test, and the application was therefore an abuse of the writ. *Id*. at 425.

We have held that a determination by a state court that a petitioner failed to make a "prima facie showing" of "sufficient specific facts" to entitle him to relief is a decision on the merits. *Rivera v. Quarterman*, 505 F.3d 349, 359 (5th Cir. 2007) (citation omitted). The first element of the *Campbell* analysis is a "state-law question," but *Rivera* categorizes the second element as "a question of federal constitutional law." *Ruiz*, 504 F.3d at 527.

In our first opinion on this appeal, we analyzed the effect of the Court of Criminal Appeals' explanation of its procedure. We first considered *Ruiz,* which concluded that a dismissal without explanation might be due to "the first element, a state-law question, or on the second element, a question of federal constitutional law." *Id*. We then evaluated what we understood *Ruiz* to say about the effect of

17

that uncertainty. Our re-evaluation on rehearing now leads us to a different understanding of *Ruiz*.

It is beyond question that this court in *Ruiz* concluded that the Court of Criminal Appeals' order denying relief was not a decision based on independent and adequate state grounds. *Id*. at 527-28. *Ruiz* gave weight to the fact that there were only four votes at the Court of Criminal Appeals for the lead opinion that denied the writ; the judge casting the fifth vote – which was necessary for the decision – explicitly reached the merits. *Id*. Even though such vote-counting was not involved in Balentine's Court of Criminal Appeals decision, our initial opinion in the present appeal held that *Ruiz* had also relied on the explanation in *Ex parte Campbell* that an unexplained denial of a subsequent application *may* have been based on a federal merits ground. We understood *Ruiz* to mean that uncertainty should be transformed into a presumption that the state court reached the merits.

We did not consider, though, that this approach was inconsistent with the Supreme Court's refusal in *Coleman* to create a "conclusive presumption of no independent and adequate state grounds in every case in which a state prisoner presented his federal claims to a state court, regardless of whether it fairly appears that the state court addressed those claims." *Coleman*, 501 U.S. at 738-39. The Texas court's explanation that it at times reaches the federal merits in denying a subsequent application cannot, consistent with *Coleman*'s admonition, be the basis for a presumption that the state court actually reached the merits.

Balentine cites several Texas cases to support the argument that denials of relief under Section 5 may be the result of a merits-determination. *E.g., Ex parte Medellin*, 223 S.W.3d 315 (Tex. Crim. App. 2006). Decisions that explicitly reach the merits, as that 45-page opinion did, are irrelevant to the issue before us.

There must be more than silence. In some form, the state court has to make a fair indication that the merits of the claims were reached. We conclude that *Ruiz*, by relying on the fact that one of the state court judges clearly reached the

merits, had a decision in which it did "fairly appear" that the state court primarily relied on federal grounds. We erred in interpreting *Ruiz* otherwise.

C. *Applying Independent and Adequate State Ground Principles to Balentine's 2009 Court of Criminal Appeals Order*

We turn now to what fairly appears in the state court's denial of relief to Balentine. The order itself was silent. As in *Coleman*, we then look to the arguments at the state court. Unlike in *Coleman*, where the Commonwealth of Virginia filed a motion to dismiss, Balentine's claims never reached the stage of requiring a response from the State of Texas. Instead, the Court of Criminal Appeals decided on its own that the statutory requirements for subsequent applications had not been satisfied. Even so, we are not without indications of the reasons for the dismissal of the *Wiggins* claim.

Because the state court's order gives no indication of the grounds for its decision, we look to what Balentine presented to that court in his subsequent application. It was filed on August 18, 2009, and made these claims:

(1) His counsel was constitutionally ineffective in investigating for and presenting evidence that would mitigate the punishment. *Wiggins*, 539 U.S. 510; *Lockett*, 438 U.S. 586.

(2) The prosecution exercised some of its peremptory challenges to jurors in an unconstitutional manner. *Batson*, 476 U.S. 79.

Because Balentine's only argument here is that the district court erred in analyzing how the Texas Court of Criminal Appeals resolved his *Wiggins* claim, we need not evaluate what the Texas court did on the *Batson* issue.

As we have already discussed, Texas allows a subsequent application by a state prisoner seeking relief from the death penalty to be considered on the merits if sufficient specific facts are shown to satisfy one of three sets of criteria. Tex. Code Crim. Proc. Ann. art. 11.071, § 5(a). Balentine first sought to exempt himself from Section 5 altogether by alleging that he did not have competent counsel

either at trial or on his initial state habeas claim.  He argued that the principles of equity, fundamental fairness, due process, and due course of law all required a remedy regardless of the strictures of Section 5.  As he phrased the argument, because he never got "one full and meaningful pass through habeas proceedings (state and federal)," applying the procedural bars of Section 5 would run afoul of these basic principles.  Balentine also noted that the Texas courts had rejected some of these arguments already, but his circumstances were unique.

The specifics of the arguments to the state court notwithstanding, the sole issue before us today is the one identified by Balentine: did the district court err in concluding that the decision of the state court was not on the merits of the *Wiggins* claim?  The only evidence is that which we find in the subsequent application itself and in the Court of Criminal Appeals' boilerplate order.  We conclude that the Texas court would not have silently accepted one or more of Balentine's arguments to ignore Section 5 altogether and then, with equal silence, reached the merits of his *Wiggins* claim.  This means that nothing in that part of his subsequent application supports his claim of error now.

We now look at Section 5 itself.  Balentine did not expressly identify in his subsequent application to the state court which subsections were relevant.  The *Wiggins* claim is not one that affects the determination of his guilt, so Section 5(a)(2) is inapplicable.  *Id.* § 5(a)(2) ("but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt").

Therefore, Balentine would have needed to present sufficient specific facts to support one of the following:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

. . .

> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

*Id.* § 5(a)(1), (3).

Balentine's subsequent application made no effort to show that the facts or law underlying his *Wiggins* claim were unavailable to him at the time of his first state application. He made that argument as to the *Batson* claim, but only the *Wiggins* claim is before us.[1] Therefore, Section 5(a)(1) was not satisfied.

We now examine Section 5(a)(3). What is required for an argument under that section was the subject of a recent decision:

> Texas largely adopted this federal gateway in crafting its own conditions for subsequent habeas applications. As the [Court of Criminal Appeals] has explained, "[t]he [Texas] Legislature quite obviously intended [§ 5(a)(3)], at least in some measure, to mimic the federal doctrine of 'fundamental miscarriage of justice.' ... apparently intending to codify, more or less, the [actual-innocence-of-the-death-penalty] doctrine found in *Sawyer v. Whitley*[, 505 U.S. 333 (1992)]."

*Rocha v. Thaler*, 619 F.3d 387, 402-03 (5th Cir. 2010) (quoting *Ex parte Blue,* 230 S.W.3d 151, 159-60 (Tex. Crim. App. 2007)). The Texas court said that *Sawyer* "expressly rejected the argument that a constitutional error that impacts only the jury's *discretion* whether to *impose* a death sentence upon a defendant who is unquestionably *eligible* for it under state law can be considered sufficiently fundamental as to excuse the failure to raise it timely in prior state and federal

---

[1] Balentine found new law for his *Batson* claim in *Miller-El v. Dretke*, 545 U.S. 231 (2005). It appears, though, that the legal arguments he draws from *Miller-El* regarding comparative juror analysis had much earlier been stated as the law by this court and the Texas Court of Criminal Appeals. *See, e.g., United States v. Webster*, 162 F.3d 308, 350 (5th Cir. 1998); *Young v. State*, 826 S.W.2d 141, 152 (Tex. Crim. App. 1991).

No. 09-70026

proceedings." *Ex parte Blue*, 230 S.W.3d at 160. Blue's claimed ineligibility was mental retardation. *Id.* at 153; *see Atkins v. Virginia,* 536 U.S. 304 (2002).

Balentine did not argue in his subsequent application that he was ineligible for the death penalty for any reason. He instead argued that his counsel had been incompetent in investigating for mitigating evidence; better evidence might have convinced jurors not to sentence him to death. The argument did not satisfy this requirement of Section 5(a)(3).

The Court of Criminal Appeals left open the possibility that a *Wiggins* claim might also be cognizable under Section 5(a)(3). The court said it would "hesitate to declare that Article 11.071, Section 5(a)(3), *wholly* codifies" the doctrine of ineligibility for the death penalty. *Id.* at 161 n.42. It was "arguable," the court wrote, that because mitigation is one of the special issues referenced by Section 5(a)(3), an application "could demonstrate by clear and convincing evidence that, but for some constitutional error, no rational juror would have answered the mitigation special issue in the State's favor." *Id.* The Texas court held it "need express no ultimate opinion on this question here." *Id.*

We perceive nothing in this footnoted observation that would inject into the same court's brief Balentine order a suggestion, much less a fair indication, that it actually reached the merits of his *Wiggins* claim. We have already held that the order did not reach the merits of the issues that we know the Texas court considers relevant, namely, ineligibility for the death penalty. We will not interpret that same perfunctory order as having reached the merits of an issue the Texas court at most has identified it might one day reach.

We hold that Balentine's subsequent application did not present sufficient facts to meet the requirements of Section 5(a)(3).

Besides being independent of the federal merits, state procedural default must also be an adequate basis for decision. A procedural rule is adequate when it is "firmly established and regularly followed," even if there is an occasional

aberrant state court decision. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  We have previously held that the Court of Criminal Appeals regularly enforces the Section 5(a) requirements. *Hughes*, 530 F.3d at 342.

In summary of the relevant parts of our review, the district court refused to grant Balentine a stay in 2008 to exhaust his claims in state court, predicting correctly that the Court of Criminal Appeals would consider the claims procedurally barred.  The Court of Criminal Appeals' 2009 denial of Balentine's subsequent application was based upon independent and adequate state procedural grounds. Therefore, Balentine has not shown the district court to be in error when it denied his Rule 60(b) motion.

The stay of execution will end upon issuance of the mandate of this court. AFFIRMED.