# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 19, 2012

Lyle W. Cayce
Clerk

No. 11-70023

BILL DOUGLAS GATES,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2702

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Bill Douglas Gates was convicted of murder in Texas state court and was sentenced to death. The district court denied his federal habeas relief and refused to certify any issues for appeal. Gates is now before the court seeking a certificate of appealability. For the following reasons, we deny his application.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70023

## I.

## A.

In the early morning of December 14, 1999, Lorenzo Smith found the body of his friend, Elfreda Gans, in the bathtub of her apartment.  Her naked body bore signs of strangulation and sexual assault.  When police arrived, blood and cleaning supplies were in the bathroom, and several of the bathroom surfaces appeared to have been wiped clean.  A search of the rest of Gans's apartment revealed blood on her bedding and a bloody bandage on the bedroom floor.

Gates was arrested and charged with Gans's murder.  While awaiting trial, Gates was incarcerated in the Harris County, Texas jail with James Jackson.  At trial, Jackson testified that Gates said that he went to Gans's apartment on the night of her murder for the sole purpose of trading cocaine for sex.  According to Jackson, Gates told him that after he and Gans got into an altercation, he hit Gans and choked her until her body became limp.  He then tried to clean up the area before leaving.  Gates also told Jackson that he later realized that he left a bandage from his injured finger at Gans's apartment.

After extensive voir dire, Gates's criminal trial began on October 23, 2000.  Over the course of several days, the prosecution presented testimonial and physical evidence linking Gates to Gans's murder.  For example, the prosecution presented evidence indicating that Gates's fingerprint was located on the wall that was next to the bathtub where Gans's body was found.  According to the examiner who found it, the fingerprint appeared to have been made while the person was leaning against the wall and placing something in the bathtub.  In addition, the state presented evidence establishing that blood stains found in Gans's bedroom contained DNA that matched Gates's DNA. On October 31, the defense rested and the case was submitted to the jury.  That same day, the jury returned a guilty verdict.

No. 11-70023

Gates's sentencing hearing began on November 1, 2000. The prosecution put on several witnesses who testified about Gates's lengthy criminal history. Among the witnesses who testified was Michael Camero, a fellow inmate at the Harris County Jail who stated that Gates had threatened to strangle him in his sleep. The defense, on the other hand, did not call any witnesses. On November 2, the jury answered the special punishment issues in a manner requiring the imposition of a death sentence. Finding no error in the judgment, the Texas Court of Criminal Appeals affirmed Gates's conviction on September 18, 2002.

**B.**

Gates subsequently filed a state application for writ of habeas corpus pursuant to Texas Code of Criminal Procedure article 11.071. In his application, Gates presented ten allegations challenging the validity of his conviction and death sentence. Without holding an evidentiary hearing, the trial court recommended that Gates's petition be denied. After reviewing the record, the Texas Court of Criminal Appeals denied him state habeas relief on August 20, 2008. *Ex parte Gates*, No. 69637-01, 2008 WL 3856718, at *1 (Tex. Crim. App. Aug. 20, 2008).

On August 19, 2009, Gates filed a postconviction petition in federal district court. In his petition, he presented six claims for federal habeas relief. The following month, Gates filed a motion to stay the district court proceedings so that he could exhaust the first five of these claims. As recognized by Gates, these five claims were not presented in his first state postconviction petition. The district court granted this motion and stayed the federal proceedings while Gates went back to state court to exhaust these claims.

In November 2009, Gates filed an application for state postconviction relief that he labeled as an initial application. According to Gates, this application was actually his initial state postconviction petition "because the pleading previously filed on [his] behalf was not actually a habeas application in

3

No. 11-70023

contemplation of Texas law." On May 5, 2010, the Texas Court of Criminal Appeals dismissed his application because the claims it contained "fail[ed] to meet the dictates of [Texas Code of Criminal Procedure] Article 11.071, § 5." *Ex parte Gates*, No. 69637-01, 2010 WL 1795758, at *1 (Tex. Crim. App. May 5, 2010).

### C.

On June 22, 2010, the district court lifted the stay and reopened Gates's case. The state then moved for summary judgment. In its supporting brief, the state argued that the five claims Gates tried to exhaust were procedurally defaulted because the Texas Court of Criminal Appeals disposed of the claims on adequate and independent state grounds. Additionally, the state asserted that Gates's remaining claim lacked merit. In response, Gates argued that these five claims were not procedurally defaulted and maintained that his remaining claim was meritorious.

In May 2011, the district court issued a memorandum and order resolving the state's motion for summary judgment. In its opinion, the district court concluded that Gates's first five claims were procedurally defaulted and that he had failed to overcome his default. Specifically, it held that the Texas Court of Criminal Appeals's rejection of these claims based on Texas Code of Criminal Procedure article 11.071, § 5 precluded federal habeas review. Along with denying Gates relief on his sixth claim, the district court also refused to issue a certificate of appealability.

Gates is now before the court requesting a certificate of appealability. In his application for a certificate, Gates sets forth the same six claims he initially presented to the district court. All six claims aver violations of his constitutional right to effective trial counsel. Specifically, Gates alleges that he was denied this right because his trial counsel: (1) did not investigate and present readily available evidence in mitigation of his punishment; (2) excused without oral

examination every venire member who indicated on his or her written questionnaire a categorical opposition to the death penalty; (3) did not object to hearsay testimony indicating that he had threatened Camero; (4) failed to object on Confrontation Clause grounds to testimony indicating that he had threatened Camero; (5) did not object to testimony describing his aggressive behavior towards police who had entered his home to arrest him; and (6) failed to object to a comment by the prosecution that allegedly addressed his failure to testify.

## II.

## A.

As mandated by federal statute, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253. Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Until a COA has been issued, federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).

A COA will issue only if the requirements of Section 2253 have been satisfied. The COA determination under this section requires an overview of the claims in the habeas petition and a general assessment of their merits. The analysis used to arrive at a COA determination varies on whether the district court denied the petition on procedural grounds or on the merits. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

No. 11-70023

To be clear, "[d]etermining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id.* at 484-85. "Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal." *Id.* at 485. "Each component of the [Section 2253(c)] showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Id.*

In contrast, where "a district court has rejected the constitutional claims on the merits, the showing required to satisfy [Section 2253(c)] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. As the Supreme Court has made clear, "a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El*, 537 U.S. at 337. Rather, for purposes of determining whether a COA should issue, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 341. "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case 'any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor.'" *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000)).

**B.**

The district court dismissed Gates's first five claims on procedural default grounds before denying his sixth claim on the merits. We will consider these rulings separately.

6

No. 11-70023

### 1.

A federal habeas claim is procedurally defaulted when the state court has based its rejection of the claim on an adequate and independent state law ground. *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008). Gates does not dispute that Texas Code of Criminal Procedure article 11.071, § 5 ("Section 5") is an adequate basis for the Texas Court of Criminal Appeals's ("TCCA") rejection of his first five claims. And rightfully so. *Balentine v. Thaler*, 626 F.3d 842, 857-58 (5th Cir. 2010) (recognizing that Section 5 is an adequate state law ground for rejecting a claim). Thus, the issue the district court had to decide in reviewing Gates's habeas petition was whether the TCCA's rejection of his first five claims on Section 5 grounds was independent of the underlying merits of his federal constitutional claims. We begin our analysis of this issue with Section 5's text.

Section 5(a) provides that "[i]f a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing" one of the following:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

No. 11-70023

Tex. Code of Crim. Proc. art. 11.071, § 5(a).  Texas Code of Criminal Procedure Article 11.071, § 5(c) requires a successive state habeas application to be dismissed as an abuse of the writ unless it can satisfy the requirements of one of the three subsections of Section 5(a).  *Id.* at § 5(c).

In his application for a COA, Gates asserts that the TCCA's dismissal order rejecting his first five claims did not specify whether it was based on a state procedural rule or whether it was predicated on the merits of his federal constitutional claims.  According to Gates, without a clear statement of the basis for its dismissal, we should interpret the TCCA's dismissal as having been interwoven with one of his federal constitutional claims, namely, his claim under *Wiggins v. Smith*, 539 U.S. 510 (2003).  Because it must have been interwoven with this claim, he contends that the TCCA's dismissal of his claims was not independent of federal law.  Accordingly, he suggests that his claims are not procedurally defaulted because the TCCA's dismissal was not based on independent state grounds.

Gates's argument is unpersuasive.  Federal courts on habeas corpus review of state prisoner claims will "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  "In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition" *Id.* at 735.

8

Here, the TCCA's order is silent on the basis for its dismissal under Section 5. Because it is silent, we must look to the arguments made to the TCCA to ascertain the basis for its order. *Balentine*, 626 F.3d at 854. As we stated earlier, Texas allows a subsequent application by a state prisoner if the application contains sufficient specific facts satisfying one of three requirements. In his second application to the TCCA, Gates did not rely on one of Section 5(a)'s three criteria that would have provided him with a basis to file a subsequent state habeas petition. Instead, he maintained that the lawyer who filed his first state habeas petition "was no counsel at all in the meaningful sense of the word, and that the document [the lawyer] filed on [his] behalf was not an application for writ of habeas corpus in fact."

While somewhat creative, this approach did not provide the TCCA with an authorized basis for accepting Gates's second state habeas petition. Section 5(a) states that a court "may not consider the merits or grant relief based on [a] subsequent application" unless the application contains specific facts satisfying one of the three aforementioned criteria. Tex. Code of Crim. Proc. art. 11.071, § 5(a). If it determines that Section 5(a)'s requirements have not been satisfied, the TCCA "shall issue an order dismissing the application as an abuse of the writ under [Section 5]." *Id.* at § 5(c). Since he did not even attempt to satisfy one of Section 5(a)'s requirements, the TCCA could have used this failure to summarily dismiss Gates's subsequent state habeas application on a state procedural ground that was completely independent of federal law. Put simply, the TCCA did not need to resort to federal law to determine that Gates's second state habeas application was a subsequent application under state law, nor did it need federal law to figure out that Gates failed to present an authorized reason under state law for it to accept his subsequent application. In light of the TCCA's silence on the basis for its Section 5 dismissal and Gates's argument in his subsequent state habeas petition, there is no fair indication that the TCCA

reached the merits of his federal constitutional claims. *Cf. Balentine*, 626 F.3d at 854 (stating that there "must be more than silence" for a federal court to conclude that the state court reached the merits of a petitioner's federal claims).

Because the TCCA's conclusion does not fairly appear to rest primarily on federal law and is not interwoven with federal law, it is independent of federal law for purposes of applying procedural default doctrine. The correctness of the district court's procedural ruling concluding that his first five claims are defaulted is therefore not subject to debate by reasonable jurists. As a result, we will not issue a COA on these claims.

Briefly, we note that the procedural bar to federal review may be lifted if a petitioner can demonstrate cause for the procedural default in state court and actual prejudice as a result of the alleged violation of federal law. *Coleman*, 501 U.S. at 750. On appeal, Gates suggests that the ineffective assistance of the lawyer who filed his first state habeas petition should excuse his procedural default. This argument is foreclosed by our precedent. *E.g., Martinez v. Johnson*, 255 F.3d 229, 241 (5th Cir. 2001) (stating that "that ineffective assistance of habeas counsel cannot provide cause for a procedural default"). And contrary to what Gates may contend, the Supreme Court's recent decisions in *Maples v. Thomas*, 132 S. Ct. 912 (2012), and *Martinez v. Ryan*, No. 10-1001, 2012 WL 912950 (Mar. 20, 2012), do not provide a basis for finding that cause exists in this case. Unlike the petitioner in *Maples*, Gates does not argue that he was abandoned by state habeas counsel.[1] In his written submissions, Gates merely contends that the lawyer who filed his first state habeas petition was ineffective. And, unlike the petitioner in *Martinez*, Gates was not denied the opportunity under state law to raise his ineffective assistance of trial counsel

---

[1] In *Maples*, the Supreme Court held that "principles of agency law and fundamental fairness" pointed to the conclusion that there was cause to excuse a petitioner's procedural default where his attorneys of record abandoned him. *See* 132 S. Ct. at 927.

No. 11-70023

claim on direct review.[2]  In Texas, a capital defendant can raise an ineffective assistance of trial counsel claim on direct review to the Court of Criminal Appeals.  *See, e.g., Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (en banc) (considering an ineffective assistance of trial counsel claim on direct review of a capital conviction).  Thus, given these material distinctions, *Maples* and *Martinez* do not alter the cause and prejudice analysis in this case.

**2.**

Before the district court, Gates's sixth claim for relief alleged ineffective assistance of trial counsel based on a failure to object to certain statements made by the prosecution.  Specifically, Gates contended that the prosecution made statements in its closing argument that impermissibly commented on his failure to testify.  In relevant part, the prosecution argued the following:

> You heard James Jackson testify.  You can decide if he learned all he did about this case—first of all, there isn't any information that the defendant had any specific papers that detail the stuff.  I guess the theory is going to be that James Jackson is so smart, so cunning, that he snuck into the defendant's non-existent papers, memorized everything, slipped them back, and he's just making up a big bunch of lies.  You really think so?  James Jackson is smart, he's articulate, and the same age as the defendant.  They both frequent the same part of town.  Isn't he the very type of person that this defendant would speak with about the crimes?  If he doesn't, how does he know so much about it?  But again, you evaluate their

---

[2]   In *Martinez*, the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 2012 WL 912950, at *11. In its opinion, the Court was careful to note that its ruling was limited to situations where the state bars a defendant from raising an ineffective assistance of trial counsel claim on direct appeal. *See id.* at 10 ("Our holding here addresses only the constitutional claims presented in this case, where the State barred the defendant from raising the claims on direct appeal.").

testimony in light of the other evidence.  Five separate times this defendant's DNA—and you could bet your bottom dollar it's blood—is found mixed with Elfreda's DNA.  Why is he leaning on the wall above her body.  Boy, sure didn't come up with any kind of explanation for that.

According to Gates, the last portion of the prosecution's statement– "Boy, sure didn't come up with any kind of explanation for that"– impermissibly commented on his failure to testify.  His trial counsel's failure to object to this statement, he maintains, deprived him of his constitutional right to effective trial representation.

The district court rejected this argument.  Applying the deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), the district court examined the TCCA's rejection of this claim.  In doing so, the district court noted that the TCCA "held that the prosecutor's comments did not impinge on Gates' right to remain silent because others could have explained the existence of the fingerprint[.]"  After discussing our precedent dealing with prosecutorial commentary on a defendant's failure to testify, the district court concluded that "the jury would not [have] naturally and necessarily assume[d] that the prosecutor referred to Gates' failure to testify[.]"  As a result, it determined that an objection to the prosecutor's statement would have been "meritless."  Because any objection would have been meritless, the district court held that Gates's trial counsel's failure to object did not constitute deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984).  Thus, the district court denied this claim because it determined that Gates had "not shown that [the TCCA's] adjudication was contrary to, or an unreasonable application of, federal law."

In deciding whether to grant a COA on this issue, we must determine if reasonable jurists would find the district court's assessment of Gates's sixth

*Strickland* claim debatable or wrong. We conclude that jurists of reason would not take issue with the district court's assessment of this claim.

"*Strickland* requires a defendant to establish deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* (internal quotation marks and citations omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). Under de novo review of a *Strickland* claim, "the standard for judging counsel's representation is a most deferential one." *Harrington*, 131 S. Ct. at 788. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal quotation marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Here, a reasonable argument can be made that, despite counsel's failure to object to the challenged statement, Gates's representation at trial was not deficient under *Strickland*. As the district court made clear, any objection to this statement would have been groundless. "Ordinarily, [t]he test for determining

13

whether the prosecutor's remarks were constitutionally impermissible is: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *United States v. Bohuchot*, 625 F.3d 892, 901 (5th Cir. 2010) (internal quotation marks and citation omitted). Because the challenged statement can be plausibly read as an attempt to call attention to the state's unrebutted evidence rather than as an effort to comment on Gates's failure to testify, there is no manifest intent to comment on Gates's silence. *See id.* ("The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark."). In addition, when read in context, the prosecutor's remark is not the type of statement that a jury would naturally and necessarily interpret as a comment on Gates's failure to testify. Instead, the more plausible reading of the statement is that it aimed to highlight defense counsel's general failure to explain the presence of Gates's fingerprints near Gans's bathtub.

Under circuit precedent, it is evident that the prosecution's challenged statement was not constitutionally impermissible. Thus, any objection to this statement by defense counsel would have been unfounded. As a result, the absence of an objection to the prosecutor's comment did not place Gates's representation outside of the wide range of reasonable professional assistance. This conclusion, combined with AEDPA's deferential standard of review, leads us to hold that reasonable jurists would not consider the district court's assessment of Gates's sixth *Strickland* claim either wrong or debatable. Accordingly, we refuse to issue a COA on this claim.

## III.

For these reasons, we DENY Gates's application for a COA.