# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-70026

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2019

Lyle W. Cayce
Clerk

MICHAEL DEAN GONZALES,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JONES, SOUTHWICK, and WILLETT, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's denial of an inmate's petition for habeas relief relating to his alleged incompetence to stand trial on capital sentencing, and for a Certificate of Appealability ("COA"). The district court erroneously granted a hearing on the merits of petitioner's claims and denied relief. We deny the petitioner a COA because his claims are procedurally barred and, alternatively, lack merit.

## I. BACKGROUND

The petitioner, Michael Gonzales, was convicted of the gruesome murders of an elderly couple and was sentenced to death by an Ector County district court on December 8, 1995. Significant evidence supporting Gonzales's

conviction was a jailhouse confession he gave to a prison guard who also happened to be one of his relatives. The Texas Court of Criminal Appeals ("TCCA") affirmed his conviction and sentence, *Gonzales v. State*, No. AP—72,317 (Tex. Crim. App. June 3, 1998) (not designated for publication), and subsequently denied his initial state habeas petition. *Ex Parte Gonzales*, No. WR-40,541-01 (Tex. Crim. App. Mar. 10, 1999) (not designated for publication).

The following year, Gonzales filed a federal petition for habeas relief in the federal district court. The district court denied relief concerning his conviction, but after the Texas Attorney General's office notified the court about an error that had occurred during the sentencing phase, the district court ordered the state court to grant Gonzales a new sentencing trial. *Gonzales v. Cockrell*, No. 7:99-cv-00073 (W.D. Tex. Dec. 19, 2002) (not designated for publication). Gonzales unsuccessfully appealed the district court's denial of guilt-phase relief to this court. *Gonzales v. Quarterman*, 458 F.3d 384 (5th Cir. 2006), *cert. denied*, 549 U.S. 1323, 127 S. Ct. 1909 (Mem.) (2007).

In May 2009, Gonzales was again sentenced to death in a second sentencing trial, presided over by the same judge who oversaw his previous sentencing trial. The second sentencing trial—and Gonzales's conduct throughout it—is the subject of this appeal. The trial court assigned two attorneys, Woody Leverett and Jason Leach, to serve as trial counsel for Gonzales during the sentencing trial. After Leverett and Leach were appointed, Gonzales wrote to them and requested that they secure the services of a New York mitigation specialist named Charles Lanier. Leverett responded that he and Leach had looked into Gonzales's request but learned that Lanier was not a mitigation specialist, but, rather, a mental health expert who opposed the death penalty. Those statements were not accurate. When Lanier

told Gonzales that Leverett's statements were inaccurate, Gonzales petitioned the court to terminate Leverett's position as his court-assigned counsel. Gonzales told the court that he did not "trust [his counsel], plain and simple. When an attorney lies to you one time, he is going to lie to you every time, so my point [is] they aren't worth s***." The court held a hearing and ultimately decided to keep Leverett in his position as trial co-counsel, basing its decision partly on Leverett's qualifications and Leverett's explanation that he had not intended to mislead Gonzales, as well as the court's distrust of Lanier's motives for involving himself.

After the court denied Gonzales's request to remove Leverett, Gonzales stopped cooperating with his counsel entirely and instructed his friends and family members to do the same. Leverett then filed a motion on his own, asking to be replaced as counsel for Gonzales because he had "absolutely no working relationship" with Gonzales, and because Gonzales repeatedly refused to cooperate with his defense team (although Gonzales sometimes reached out to his attorneys for help acquiring items for day-to-day use inside prison). The court denied the motion.

Gonzales's demeanor in court became increasingly hostile and volatile over the course of his sentencing trial. On the first day of testimony, Gonzales's wife was called to testify and was warned by prosecutors that she could be charged as an accomplice if she repeated previous statements she had made to the police. When she appeared confused by the admonishment, Gonzales spoke out:

> GONZALES: If she don't want to testify, leave her alone, man. That's my wife. She has the right to plead the Fifth Amendment. She don't got to testify against nobody. You are harping her, man. You are f***ing with her mind. Leave her alone. She don't want to testify.

No. 18-70026

COURT: Retire the jury.

(Jury retired from courtroom).

GONZALES: See how you got her all emotional. You ain't got to testify, Martha. Don't let them get in your head. You have got the right to keep the Fifth Amendment. You should be ashamed of yourself, man.

COURT: Now, where are we?

PROSECUTOR: [Gonzales's wife] has told me that she is frightened, that she is scared of the defendant, and I think she –

GONZALES: Godd*** right she is scared because y'all put her in that f***ing position, man. Just leave her alone. She don't want to testify.

After a recess, Gonzales's wife testified that Gonzales had murdered the victims. Gonzales interrupted her testimony and exclaimed, "[s]ame thing's gonna happen to you, b****. I'm gonna f***ing have somebody kill your ass." After the jury was excused, the court admonished Gonzales for repeatedly interrupting the proceedings and asked if he was aware of the consequences for continuing that behavior. Gonzales said that he was aware of the consequences—that the court could either "remove [him] from the courtroom or gag [him]." The court then asked Gonzales if he was "going to continue to create problems," and Gonzales replied, "whenever my blood rises, I speak my mind."

On the final day of the trial, Gonzales's counsel announced their intent to call several witnesses, including Gonzales's half-sister, his daughter, and an expert witness. But Gonzales adamantly refused to allow the witnesses to testify and threatened to cause a disturbance if they did. Consequently, Gonzales was the last witness the defense called. On the stand, when Leverett asked Gonzales if there was anything he wanted to tell the jury, Gonzales

4

No. 18-70026

replied, "[y]eah. Y'all can f***ing kill me. Makes me no f***ing difference. Pass the witness." The prosecution said it had no questions for Gonzales on cross-examination, and the court called Leverett back to the stand for a redirect. When the court called Leverett to conduct the redirect, Gonzales protested, "[n]o, man. I told you yesterday why do I want your f***ing assistance, man? You won't listen to me." Leverett then told the court that the defense rested. Gonzales was subsequently sentenced to death.

Gonzales's second death sentence was upheld by the TCCA, *Gonzales v. State*, 353 S.W.3d 826 (Tex. Crim. App. 2011), and he did not seek state habeas relief. On November 10, 2010, the TCCA issued an order stating that Gonzales had not filed a habeas application, and that any subsequent applications would be reviewed under Texas Code of Criminal Procedure 11.071, Section 5 (governing abuse of the writ) as a result. *Ex Parte Gonzales*, No. 40,541-03 at Order.

Gonzales filed another federal habeas petition on December 27, 2012 and an amended petition on November 5, 2013. Gonzales then moved to stay the federal habeas proceedings while he returned to state court to exhaust his claims. The district court granted the motion in part, and Gonzales filed another state habeas petition. Relying on Gonzales's waiver, the TCCA dismissed his petition as an abuse of the writ. *Ex Parte Gonzales*, 463 S.W.3d 508 (Tex. Crim. App. 2015). Thereafter, Gonzales filed an amended petition in the district court, along with a motion for an evidentiary hearing. The district court overruled the state's contention that all of Gonzales's issues were procedurally barred and further concluded that it could hold a *de novo* hearing on the issues. *But see* 28 U.S.C. § 2254(e)(2). The court accordingly held a seven-day evidentiary hearing, after which it ruled, in a lengthy and careful opinion, that the trial court did not err by not ordering a competency hearing *sua sponte*, that Gonzales was not incompetent to participate in the second

5

sentencing trial, and that his trial counsel's decision not to raise the issue of Gonzales's competency did not amount to ineffective assistance of counsel. The court also denied Gonzales a COA.

Gonzales has appealed, seeking a COA for issues that he raised for the first time in the state writ application denied as an abuse—his *Pate* claim and his Ineffective Assistance of Trial Counsel ("IATC") claim—and for his contention that the district court's retrospective competency hearing, which he sought to begin with, was inadequate and speculative.

## II. STANDARD OF REVIEW

A COA is necessary to appeal the denial of federal habeas relief, 28 U.S.C. § 2253(c)(1), and the requirement is jurisdictional. *Miller- El v. Cockrell*, 537 U.S. 322, 335–36, 123 S. Ct. 1029, 1039 (2003). Federal review of a habeas claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038 (1989). To overcome a procedural bar, a habeas petitioner must show cause for the default and actual prejudice, or that a miscarriage of justice will occur if the federal court does not consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). Failure to raise a claim in an initial state habeas corpus application may not be excused for cause unless the claim was not "reasonably available" at the time of the prior petition. *Fearance v. Scott*, 56 F.3d 633, 636 (5th Cir. 1995) (internal quotation marks and citation omitted). To show cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). To show prejudice, a petitioner must show that the error "worked to his actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982)

(emphasis omitted). And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339–40, 112 S. Ct. 2514, 2519 (1992).

When claims are properly preserved, this court reviews "the district court's findings of fact for clear error and its conclusions of law *de novo.*" *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013) (citation omitted). This court "will not disturb a district court's factual findings unless they are implausible in the light of the record considered as a whole." *Wiley v. Epps*, 625 F.3d 199, 213 (5th Cir. 2010) (citation omitted).

Determining whether a COA should issue "requires an overview of the claims in the habeas petition and a general assessment of their merits," but not "full consideration of the factual or legal bases adduced in support of the claims." *Miller-El*, 537 U.S. at 336, 123 S. Ct. at 1039. To receive a COA for a preserved claim, a petitioner must "show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (internal quotation marks and citation omitted).

### III. DISCUSSION

Gonzales seeks a COA to advance three arguments to defeat his sentence. First, he contends that the state trial court erred by not conducting *sua sponte* a competency hearing after Gonzales continually displayed bizarre behavior during his second sentencing trial, as required by *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836 (1966). Relatedly, he argues that his trial counsel rendered ineffective assistance by failing to raise the question of Gonzales's competency during the resentencing trial. Finally, he asserts that the seven-day, retrospective competency hearing conducted by the district court was inadequate and yielded a purely speculative competency finding concerning

the decade-earlier trial. We agree with the state, however, that Gonzales's claims are procedurally defaulted. Alternatively, the claims lack merit.

## A. Procedural Bar

The district court held that Gonzales's claims were not procedurally barred, because, in its view, the transcript from Gonzales's post-sentencing hearing in state trial court did "not sufficiently support the conclusion that petitioner's waiver of a portion of his post-conviction remedies was fully voluntary and intelligent." The district court further based its decision on the fact that "[t]he state trial court did not make any genuine or sincere effort to advise petitioner of the rights he was waiving by rejecting appointment of state habeas counsel or to ascertain whether petitioner's purported waiver of the right was voluntary." The district court denied the state's motion for reconsideration because it identified "no precedent in which a waiver of state habeas rights in a death penalty case has been recognized upon circumstances analogous to those" in this case.

The district court's ruling was in error. Contrary to its conclusion, we are unaware of any cases that found no waiver of rights following the type of colloquy that occurred here.[1] The TCCA's brief opinion explains plainly why Gonzales's successive state habeas petition was an abuse of the writ. *Ex Parte Gonzales,* 463 S.W.3d at 508. Alluding to the record, the TCCA notes that Gonzales told the state trial court in a post-trial hearing that he did not wish to pursue any appeals or have any counsel appointed on his behalf. Gonzales

---

[1] From the standpoint of AEDPA, the court should not have disagreed with the TCCA's holding on waiver except under the standards of 28 U.S.C. §§ 2254(d) or (e)(1). Be that as it may, the district court's professed concern about Gonzales's ability to understand and knowingly waive his rights about post-trial procedure is confusing considering the court's finding, based on the testimony of the trial judge from the sentencing trial, that Gonzales, despite his outbursts, had a surprisingly sophisticated understanding of the legal proceedings.

told the trial court: "I would like the record to reflect I want to waive all my appeals and will have execution set as soon as possible." To be more specific about the underlying proceeding, the state court informed Gonzales that an appeal on the merits was mandatory and then appointed counsel for his appeal. The judge then informed Gonzales, "you are entitled for [sic] an attorney to file a Writ of Habeas Corpus in addition to the attorney for the appeal. Now, do you wish that to be done? Do you want an attorney?" Gonzales again stated that he did not wish to file any appeals. Twice more, the state trial court asked Gonzales whether he wanted an attorney for habeas purposes, and both times Gonzales responded, "I don't want no attorney, period." During the exchange, the state court also informed Gonzales: "you may proceed pro se if you desire to."

Federal habeas claims are procedurally barred if the last state court to review the petitioner's claims unambiguously based its denial on a state procedural bar. *See Harris*, 489 U.S. at 264, 109 S. Ct. at 1044. Here, the TCCA unambiguously held that Gonzales's claims were procedurally barred because he had waived his right to habeas counsel and did not file a habeas claim pro se before the deadline expired. *See Ex Parte Gonzales*, 463 S.W.3d at 509. And based on the foregoing record, it had ample reason to so hold. The district court's expressed view that the state's procedural bar might not apply, because there is no precedent analogous to the facts in this case, is unfounded in light of this court's consistent application of the procedural bar when a state court has rejected a claim based on a clearly-explained application of procedural rules.[2] *See, e.g., Garza v. Stephens,*

---

[2] Gonzales reiterates a similar claim in his reply brief. He acknowledges that "[u]nquestionably, the abuse-of-the-writ rule utilized by the [T]CCA in Gonzales's case is in most cases an adequate state procedural ground" but argues that the procedural bar in his case is inadequate. First, Gonzales alleges that the "representation issue was never properly addressed" by the state trial court. Second, Gonzales argues that the TCCA failed to address

No. 18-70026

738 F.3d 669, 675 (5th Cir. 2013) ("A federal habeas claim is barred by procedural default when the state court has rejected the claim pursuant to a state procedural rule that provides an adequate basis for the decision, independent of the merits of the claim.") (citations omitted); *Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010); *Hayes v. Quarterman,* 530 F.3d 336, 342 (5th Cir. 2008).

Because the last state court to consider Gonzales's habeas petition unambiguously based its denial on a state procedural bar, Gonzales's federal habeas claims are procedurally barred. To overcome this procedural bar, therefore, Gonzales must meet the cause and prejudice standard set forth in *Murray*. Gonzales's claims fall short of the high procedural hurdle they must clear. Because Gonzales's failure to seek state habeas relief was caused solely by his refusal to accept habeas counsel[3] and his failure to file a timely pro se petition, he cannot point to a cause external to his defense to excuse his procedural default. *See Murray*, 477 U.S. at 488, 106 S. Ct. at 2645. To the extent that Gonzales might claim that his alleged mental incompetency satisfies the "cause" requirement, that claim fails not only because it is not a cause external to the petitioner,[4] but also as a factual matter, discussed below.

---

Gonzales's argument that due process does not permit incompetent prisoners to waive state habeas counsel and that he was, in fact, incompetent to waive his state habeas counsel. Finally, Gonzales argues that the TCCA's holding violated due process because it implicitly held "that a prisoner's mental incompetence does not affect the validity of his waiver of state habeas proceedings or waiver of counsel for such proceedings." These arguments are no more than an attempted end run around the TCCA's finding, noted above, that Gonzales was competent and decisive in his rejection of appointed counsel. They do not reflect the "inadequacy" of the procedural bar.

[3] Because Gonzales failed to accept counsel for habeas following the resentencing, he may not avail himself of the *Martinez/Trevino* exception to cause and prejudice, which is contingent on counsel's failings.

[4] This court and others have held that mental impairments are not factors external to the petitioner's defense and do not excuse procedural default. *See, e.g., United States v.*

No. 18-70026

Even if Gonzales's claims were not procedurally barred, however, they would not merit a COA.

## B. *Pate* Claim

Criminal defendants have a substantive right to be competent when sentenced, and that right can only be guaranteed by adequate trial procedures. *United States v. Flores-Martinez*, 677 F.3d 699, 705–06 (5th Cir. 2012). Gonzales contends that the state trial court failed to provide those procedural safeguards by not conducting a hearing *sua sponte* to assess his competency in connection with his second sentencing trial. When deciding whether a *sua sponte* inquiry into a defendant's competency is necessary, a trial court weighs three factors: (1) whether the defendant has a history of irrational behavior; (2) the defendant's demeanor at trial; and (3) prior opinions from medical professionals about the defendant's competency. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908 (1975). The district court took into account all of the evidence before it in finding Gonzales competent and rejecting Gonzales's *Pate* claim. Nevertheless, Gonzales challenges the district court's findings.

Gonzales argues that the state trial judge, Judge Bill McCoy, was fully aware that Gonzales had cut his attorneys out of his defense for months leading up to his resentencing trial and that communication between Gonzales and his counsel about legal matters had broken down completely. His claim boils down to the assertion that his sustained refusal to cooperate with his attorneys while facing the death penalty, based solely on a single encounter that may have been a miscommunication, was manifestly behavior in which a

*Flores*, 981 F.2d 231, 236 (5th Cir. 1993) ("Neither [Petitioner's] illiteracy, nor his deafness, nor his lack of training in the law amounts to cause either, because none of these factors was external to [Petitioner's] defense."); *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012) (holding that petitioner's mental condition could not serve as cause to excuse procedural default).

competent person would not engage.    Gonzales argues that his behavior reflected deep, irrational paranoia that satisfies the first prong of the inquiry— a "history of irrational behavior."

The second prong of the analysis, the defendant's behavior at trial, is easily satisfied in Gonzales's view.  He argues that the trial court watched him threaten to have witnesses killed, repeatedly use profanity, and threaten to disrupt the proceedings by grabbing a gun if his attorneys allowed three witnesses to testify on his behalf at the close of the trial.    According to Gonzales, the behavior the court witnessed was produced by severe mental illness rather than his extremely anti-social attitude.

Gonzales also argues that the trial judge was well aware of his history of mental illness, because the judge had presided over his initial trial, in which multiple mental health experts testified that Gonzales had been diagnosed with schizoaffective disorder at age 16 and had possibly suffered some form of brain damage from childhood head injuries and adolescent substance abuse. Additionally, Gonzales argues that his defense team had made the court aware through various filings that he had developed diabetes in 2003 that was often uncontrolled and that could have contributed to his mental impairment.   In sum, Gonzales alleges that the cumulative effect of the evidence, from both before and during the second sentencing trial, is that jurists of reason could debate the district court's conclusion that Gonzales was not deprived of adequate assurances of a fair trial without the court's conducting a *sua sponte* competency hearing.

This court disagrees.  The district court understood that a *Pate* inquiry considers whether the trial court was aware of information that "should reasonably have raised a doubt about the defendant's competency and alerted [the court] to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in

his defense." *Roberts v. Dretke*, 381 F.3d 491, 497 (5th Cir. 2004) (internal quotation marks, brackets and citation omitted).  The district court addressed each of the arguments Gonzales makes here.

To begin, Gonzales's refusal to cooperate with his attorneys does not, alone, demonstrate a longstanding history of irrational behavior that should have cast doubt on his competence to stand trial.  In fact, as the district court noted, Gonzales's explanations to the court of his reasons for not cooperating evinced a clear understanding of the proceedings and of the significance of his trial counsel's participation.  Gonzales was aware of his circumstances—he simply did not wish for his attorneys to have a meaningful say in the matter. He chose to trust the word of Charles Lanier, who wrote Gonzales a long letter asserting that Leverett was "dangerously incompetent," over the trial judge's assurances that Leverett and his co-counsel were highly capable of assisting his defense.  Although perhaps unwise, that decision is not evidence of mental disability.  Further, Gonzales's pattern of asking his attorneys for assistance in non-legal matters, such as obtaining items he could not access on his own in prison, shows that he was perfectly capable of cooperating with his attorneys when he felt that doing so was in his best interest.

Gonzales's behavior at trial likewise did not alert the trial court to the need to conduct a competency hearing.  Gonzales was explosive, threatening, and uncooperative, but he did not demonstrate an inability to understand the proceedings or to assist in his own defense.  *See Flores-Martinez*, 677 F.3d at 708 ("[Petitioner's] conduct, while angry and inappropriate, was not divorced from reality.").  To the contrary, Gonzales told the court that he was aware that his outburst could lead to his being gagged or removed from the courtroom.  In other words, he was aware of the consequences of his behavior, but simply chose to speak anyway when his "blood [rose]."  Gonzales was also clearly aware of the significance of his wife's testimony and of her right against self-

incrimination, as he repeatedly encouraged her to invoke the protections of the Fifth Amendment.  To hold that recalcitrant and anti-social behavior at trial constitutes, by itself, evidence in favor of a *Pate* claim would create perverse incentives for future defendants to disrupt court proceedings.

Finally, the district court recognized the limits of Gonzales's contention that the state court judge was aware of his previous diagnoses of mental illness from expert testimony at his 1995 trial.  As the state points out, "[t]he flaw in this claim is that Gonzales has conceded he was competent at his 1995 trial." Gonzales's mental health diagnoses have not changed since his initial trial, except for his new claim that diabetes (diagnosed in 2003) may have caused his conditions to worsen.  There is no objective evidence showing that to be the case, however.

 Gonzales's arguments are largely quarrels with the findings of fact by the district judge, which he has not shown to be clear error.  Cumulatively, all of the evidence brought to bear in the district court on the issue of Gonzales's competency in 1995 supports the conclusion that reasonable jurists cannot debate that court's denial of the *Pate* claim.

**C. Ineffective Assistance of Trial Counsel Claim**

Gonzales pursues a COA that his trial counsel's decision not to pursue a competency hearing during his second sentencing trial was constitutionally deficient.  He argues that his attorneys "were bound by professional standards to pursue the issue" of his competency.  To succeed on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance (1) fell below the objective standard of assistance that a reasonable attorney would be expected to provide; and (2) resulted in actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

The district court dismissed Gonzales's claim and denied a COA because it concluded that, "[b]ased on their numerous conversations and

correspondence with [Gonzales], there was . . . nothing before trial counsel to lead them to question [Gonzales's] competency." Indeed, Gonzales's counsel was fully aware that he was capable of interacting and cooperating with them when he felt that doing so would benefit him. Gonzales also clearly explained his reasons, misguided or otherwise, for not cooperating with his counsel during conversations with the court at various points in the trial. Moreover, considering Gonzales's admission that he was competent to stand trial in 1995, the expert testimony from that trial about Gonzales's various mental health conditions did not require his counsel to pursue the matter in his subsequent trial. Although one woman hired as a mitigation specialist by the trial counsel suggested the need for a competency hearing, the district court found counsel's rejection of that idea a rationally grounded tactical decision.

In short, because there was no objective evidence that Gonzales was incompetent other than his recalcitrance, his trial counsel was not deficient for choosing not to pursue that issue at his second sentencing trial. *See McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989) ("There can be no deficiency in failing to request a competency hearing when there is no evidence of incompetency."). Reasonable jurists could not debate the district court's decision to reject this claim, and a COA was properly denied.

## D. Inadequate District Court Retrospective Competency Hearing Claim

Gonzales's disgruntlement with the district court's retrospective competency hearing, which he had demanded, is not only barred but is unfathomable. After failing to persuade the district court on his *Pate* claim, Gonzales now asserts that no adequate conclusion as to his competency in 2009 was possible. But the district court afforded him every opportunity,

15

No. 18-70026

particularly in light of its erroneous holding on procedural bar, to develop his claims.

In any event, he did not make this argument on inadequacy to the district court, and it is therefore waived. *See Martco Ltd. P'ship v. Wellons, Inc.,* 588 F.3d 864, 877 (5th Cir. 2009). Moreover, this court lacks jurisdiction to entertain an issue for a COA on which no request for a COA has been made in the district court. *Black v. Davis,* 902 F.3d 541, 545 (5th Cir. 2018) (citing *Brewer v. Quarterman,* 475 F.3d 253, 255 (5th Cir. 2006)).

## CONCLUSION

For the foregoing reasons, we **DENY** the application for a COA**.**