# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2024

Lyle W. Cayce
Clerk

No. 19-70008

Chuong Duong Tong,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-2355

Before Smith, Higginson, and Duncan, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Over 26 years ago, petitioner Chuong Duong Tong murdered an off-duty police officer in Houston, Texas by shooting him at point-blank range during a robbery. A Texas jury found Tong guilty of capital murder and sentenced him to death. Tong has since spent decades traversing state and federal courts, unsuccessfully seeking to overturn that sentence. Tong now raises three issues on appeal.

First, Tong argues the district court erred by not granting a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), to allow him to return to state court to

No. 19-70008

exhaust a procedurally defaulted ineffective assistance of trial counsel ("IATC") claim based on an alleged failure to present mitigating evidence under *Wiggins v. Smith*, 539 U.S. 510 (2003). Second, Tong requests a Certificate of Appealability ("COA") to appeal the district court's denial of that same IATC claim. And third, Tong seeks habeas corpus relief based on the state trial judge's purported due process violation arising from its management of *voir dire*, a claim for which he previously received a COA.

Addressing each issue in turn, we conclude the district court committed no error. Accordingly, the district court's order denying Tong's request for a *Rhines* stay is AFFIRMED. Tong's motion for an additional COA on his *Wiggins* claim is DENIED. The district court's judgment denying Tong a writ of habeas corpus on his *voir dire* claim is AFFIRMED.

## I. Facts and Proceedings

### A.

The jury heard the following evidence at trial. On April 6, 1997, off-duty Houston police officer Tony Trinh was working at his parents' convenience store. Tong approached Trinh with a semi-automatic handgun, demanding his wallet and jewelry. Trinh showed Tong his police badge and told Tong he "was not going to get away with this." Tong then killed Trinh by shooting him in the head at close range, took Trinh's jewelry, and fled to a waiting car. Days later, Tong asked his roommate to sell Trinh's jewelry.

After Tong's arrest, he gave police a statement detailing the robbery and shooting. He also showed police where he disposed of the gun. Tong claimed he accidentally shot Trinh while jumping over the counter.

During pre-trial detention, a fellow inmate asked Tong how close he was when he shot Trinh. Tong responded by touching his finger to the inmate's forehead and saying "bang." When asked if he felt bad about killing

2

Trinh, Tong laughed and mockingly said that he felt terrible and cried himself to sleep. Later, when a police officer was preparing Tong's restraints for transport, Tong placed his fingers in the shape of a pistol, pointed them at the officer's head, and mouthed the word "bang." The jury found Tong guilty of capital murder on alternative theories that he intentionally killed Trinh, a police officer performing his official duties, or that he intentionally killed Trinh during a robbery or attempted robbery.

At the penalty phase, the jury heard evidence of Tong's troubled past, including numerous disciplinary problems at school, theft, destruction of property, sexual harassment, and assault. The jury also heard that, about a month after Trinh's murder, Tong took part in a bank larceny involving $400,000. Additionally, the State presented evidence that two days before the Trinh murder, Tong and an accomplice broke into the home of Vincent and Hannah Lee. Mrs. Lee was at home that day with her sick toddler. Tong tied Mrs. Lee up, put a gun to her head, and told her he was going to rob and kill her. When Mr. Lee came home during the robbery, Tong shot him, though not fatally, dragged him into the room where Mrs. Lee and the toddler were, and threatened to kill him. Leaving the house, Tong said he would "kill all of [them]" and began firing toward the family, while laughing. He hit both the toddler and Mr. Lee but did not kill them.

The jury also heard mitigation evidence. For instance, it heard about Tong's challenges as a result of being abandoned by his father and mother. Tong and his father moved to Germany, where Tong moved in and out of foster homes and orphanages. Tong's father abandoned him in Germany and moved to the United States. After Tong became a serious disciplinary problem, his German foster parents sent him to Houston to live with his father. After being abandoned again by his father in Houston, Tong lived intermittently with other family members until he was 21.

No. 19-70008

The jury determined it was probable that Tong would commit future acts of criminal violence posing a continuing threat to society and that the mitigating evidence did not warrant a life sentence. On March 11, 1998, the trial court sentenced Tong to death.

**B.**

On direct appeal, the Texas Court of Criminal Appeals ("TCCA") affirmed Tong's conviction and sentence, rejecting his 18 points of error. *Tong v. State*, 25 S.W.3d 707 (Tex. Crim. App. 2000) (en banc), *cert. denied*, 532 U.S. 1053 (2001). Tong then filed a state habeas petition presenting 12 claims. The petition did not raise an IATC claim under *Wiggins* based on trial counsel's failure to investigate and present mitigating evidence at the punishment phase. *See Wiggins*, 539 U.S. 510. In 2009, the TCCA denied Tong's habeas application. *Ex Parte Tong*, 2009 WL 1900372 (Tex. Crim. App. July 1, 2009) (per curiam).

Tong timely filed a federal habeas petition in 2010. A second amended petition, filed in 2014, presented, *inter alia*, (1) a *voir dire* claim, (2) two *Brady* claims, and (3) a *Wiggins* IATC claim. Tong also requested funding under 18 U.S.C. § 3599 to investigate and develop his *Wiggins* claim. That claim argued counsel should have discovered and presented more mitigating evidence—specifically, evidence of past sexual abuse by family members. Tong presented such evidence for the first time by attaching to his second amended petition affidavits from his two cousins, John Tran and Sang Tran. Although admitting this IATC claim was procedurally defaulted because it was raised for the first time in federal court, Tong argued he could overcome the default based on ineffective assistance of state habeas counsel ("IAHC").

The district court denied Tong's habeas petition and funding request. It ruled that even if Tong's state habeas counsel was ineffective, Tong was

4

not entitled to habeas relief because he failed to show that trial counsel was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984). That was so, the district court reasoned, because trial counsel "retained professional investigators, conducted interviews with Tong and members of his family, and retained appropriate experts to assist in the preparation of Tong's mitigation case."

The district court granted Tong a COA on his *voir dire* claim but denied COAs on his *Wiggins* and *Brady* claims.

## C.

Tong timely appealed and requested from our court additional COAs on the *Wiggins* and *Brady* claims. We denied a COA on the *Brady* claims but remanded for the district court to reconsider Tong's § 3599 funding request regarding his *Wiggins* claim under the new test from *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018). *See Tong v. Lumpkin*, 825 F. App'x 181, 186 (5th Cir. 2020). On remand, the district court granted Tong's funding request. We then stayed proceedings on Tong's *Wiggins* COA application; vacated the district court's denial of that application; retained jurisdiction over the remaining appellate issues; and remanded for factual development of the *Wiggins* claim.

The Supreme Court then decided *Shinn v. Ramirez*, 596 U.S. 366 (2022). *Shinn* held that *Martinez v. Ryan*, 566 U.S. 1 (2012), does not permit federal courts "to dispense with [28 U.S.C.] § 2254(e)(2)'s narrow limits" on developing the state-court record "because a prisoner's state postconviction counsel negligently failed to develop [that] record." *Shinn*, 596 U.S. at 371; *see also Mullis v. Lumpkin*, 70 F.4th 906, 910 (5th Cir. 2023) (noting *Shinn* addressed "the use of evidence . . . to assess the defendant's underlying merits claim of ineffective assistance of *trial* counsel"). Because Tong did not claim to satisfy § 2254(e)(2)'s stringent requirements, the State

moved to terminate the remand because the remand's purpose—developing Tong's *Wiggins* claim—was now foreclosed by *Shinn*. In response, Tong asked the district court to grant a stay and abeyance under *Rhines* to permit him to exhaust his *Wiggins* claim in state court. The district court denied the stay request, entered final judgment in March 2023, and terminated remand on the grounds argued by the State. Tong timely appealed.

## II. Standards of Review

We review the denial of a *Rhines* stay for abuse of discretion, *Young v. Stephens*, 795 F.3d 484, 495 (5th Cir. 2015), which occurs when a court "bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Perez v. Stephens*, 745 F.3d 174, 177 (5th Cir. 2014) (citation omitted).

A petitioner may appeal the denial of federal habeas relief only if he first obtains a COA under 28 U.S.C. § 2253(c)(1). *Gonzales v. Davis*, 924 F.3d 236, 241 (5th Cir. 2019) (per curiam).[1] To do so, he must make "a substantial showing of the denial of a constitutional right." § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When the petition was denied on substantive grounds, the petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. When the petition was denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition

---

[1] As noted in our prior opinion, Tong did not request COAs from the district court on any of his claims. *Tong*, 825 F. App'x at 184 n.1. We nonetheless have jurisdiction to consider his COA requests because the district court *sua sponte* granted and denied COAs on his *voir dire* and *Wiggins* claims, respectively. *See ibid.* (citing *Cardenas v. Thaler*, 651 F.3d 442, 443 (5th Cir. 2011)).

states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Once a COA has been granted on a habeas claim, we review the court's "factual findings for clear error and its legal conclusions *de novo*." *Mullis*, 70 F.4th at 909. We review mixed questions of law and fact *de novo* "by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005).

## III. Discussion

We address three separate issues. First, Tong argues the district court erred in denying his motion for a *Rhines* stay. Second, Tong asks for an additional COA based on his unexhausted *Wiggins* claim. Third, Tong argues he was denied due process by the trial court's allocation of peremptory strikes during *voir dire*.

### A. *Rhines* stay

Tong argues the district court erred by denying a stay to allow him to exhaust his *Wiggins* IATC claim in state court.[2] *See Rhines*, 544 U.S. at 277–78. Such a stay is granted "only in limited circumstances because staying a federal habeas petition frustrates" the objectives of the Antiterrorism and

---

[2] In connection with this argument, Tong contends he has a constitutional right to effective assistance of counsel in initial-review collateral proceedings. He is mistaken. The Supreme Court has long held "there is no right to counsel in state collateral proceedings." *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). More recently, in *Shinn*, the Court stated it has "repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings." 596 U.S. at 386; *see also, e.g.*, *In re Hensley*, 836 F.3d 504, 507 (5th Cir. 2016) (per curiam) (holding *Martinez* did not establish a new constitutional right to effective assistance of counsel in collateral proceedings).

Effective Death Penalty Act of 1996 ("AEDPA")—namely, to encourage "finality and streamlin[e] federal habeas proceedings." *Young*, 795 F.3d at 494–95 (cleaned up) (quoting *Rhines*, 544 U.S. at 277). A district court abuses its discretion in denying a *Rhines* stay only if (1) there was good cause for failing to exhaust the claim in state court, (2) the claim is potentially meritorious, and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

The State argues Tong's *Rhines* request failed all three prongs. Agreeing with the State as to the first and second prongs, we need not reach the third.

**1.**

Tong argues the "good cause" for not exhausting his *Wiggins* claim was his state habeas counsel's failure to raise it. The *Rhines* "good cause" standard, he contends, is more forgiving than the standard for "cause" for procedural default under *Martinez* and *Trevino v. Thaler* (*Trevino I*), 569 U.S. 413 (2013). In the procedural default context, IAHC can constitute "cause" for defaulting an IATC claim. Tong contends IAHC should also serve as "good cause" under *Rhines* for failing to exhaust his *Wiggins* claim.

Our precedent forecloses Tong's argument. In *Williams v. Thaler*, we held that IAHC cannot serve as "good cause" for a *Rhines* stay. 602 F.3d 291, 309 (5th Cir. 2010), *abrogated on other grounds by Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021). Tong responds that *Williams* was abrogated by *Martinez* and *Trevino I*. In *Williams*, he points out, we tied our *Rhines* "good cause" holding to our finding no "cause" for procedural default. It is true that *Martinez* and *Trevino I* overruled our procedural default holding in *Williams* by permitting IAHC to serve as "cause." *See Martinez*, 566 U.S. at 17; *Trevino I*, 569 U.S. at 429. But those cases said nothing about what constitutes "good cause" for failure to exhaust under *Rhines*. Therefore,

No. 19-70008

*Williams* remains binding in this circuit as to the *Rhines* standard. We would violate our rule of orderliness by extending *Martinez* to *Rhines*.[3] *See United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (explaining we have "specifically rejected the idea that later Supreme Court and other decisions that were not directly on point could alter the binding nature of our prior precedent").

**2.**

Tong next contends his *Wiggins* claim is potentially meritorious because it meets an exception to Texas's bar on second-or-successive habeas applications. *See Rhines*, 544 U.S. at 278. Texas courts will not address the merits of unraised claims that could have been brought on initial habeas. But this bar does not apply if, "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072." TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a)(3). The district court ruled that no § 5(a) exception applied to Tong's case.[4]

Tong nonetheless predicts that Texas courts may still consider his *Wiggins* claim because it meets the exception in § 5(a)(3) for actual innocence of the death penalty. According to the TCCA, § 5(a)(3) "more or less" adopted the Supreme Court's actual innocence of the death penalty rule in

---

[3] *Cf. Blake v. Baker*, 745 F.3d 977, 983–84 (9th Cir. 2014) (holding "good cause" showing under *Rhines* "cannot be any more demanding than" showing "cause" under *Martinez*).

[4] Tong's counsel conceded at oral argument the first exception—that the factual or legal basis for his claim was unavailable on the date of his previous application, § 5(a)(1)—is no longer relevant to this case given our decision in *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461 (5th Cir. 2023) (per curiam).

*Sawyer v. Whitley*, 505 U.S. 333 (1992). *Ex parte Blue*, 230 S.W.3d 151, 159–60 (Tex. Crim. App. 2007). *Sawyer* limited this exception to situations where alleged constitutional errors only "affect[ed] the applicant's *eligibility* for the death penalty *under state statutory law*." *Blue*, 230 S.W.3d at 161. Tong does not argue, however, that additional mitigating evidence would have made him *ineligible* for the death penalty; he contends only that it would have influenced the jury's decision to impose that penalty. So, under *Sawyer*, Tong could not avail himself of § 5(a)(3) because he was "unquestionably *eligible*" for the death penalty under Texas law. *Id.* at 160.

It is true, though, that the TCCA has "left open the possibility that a *Wiggins* claim might also be cognizable under Section 5(a)(3)." *Balentine v. Thaler*, 626 F.3d 842, 856 (5th Cir. 2010). A footnote in the TCCA's *Blue* decision "hesitate[d] to declare that" § 5(a)(3) "*wholly* codifies" the doctrine of ineligibility for the death penalty. 230 S.W.3d at 161 n.42. But the TCCA "express[ed] no ultimate opinion on this question." *Ibid.* It is unclear, then, under Texas law whether a *Wiggins* claim can satisfy the § 5(a)(3) exception. *See ibid.*

We conclude that the TCCA's hesitance on this point, as expressed in the *Blue* footnote, does not make Tong's *Wiggins* claim potentially meritorious under *Rhines*. In essence, Tong asks us to find this claim potentially meritorious to allow the TCCA to revisit its precedent. We recently held, though, that permitting a state court to revisit its procedural default precedent is not sufficient grounds for a *Rhines* stay. *See Sandoval Mendoza*, 81 F.4th at 482. In *Sandoval Mendoza*, a Texas habeas petitioner argued for the first time in federal court that his trial counsel was ineffective. *Id.* at 467. We refused his request for a *Rhines* stay to exhaust this procedurally defaulted claim because it was meritless under the second-or-successive bar. *Id.* at 482. Although addressing the § 5(a)(1) exception, we noted that "[t]he opportunity to reconsider state court precedent . . . is not

in itself enough to grant a *Rhines* stay." *Ibid.* Similarly, we cannot approve a *Rhines* stay based solely on *dicta* that "left open the possibility that a *Wiggins* claim might also be cognizable under Section 5(a)(3)." *Balentine*, 626 F.3d at 856. Although *Blue*'s footnote *questioned* whether a *Wiggins* claim could meet § 5(a)(3), the TCCA has never held it does. The mere possibility that it might does not make Tong's claim potentially meritorious under *Rhines*.

Furthermore, even after *Blue*, we have held that a *Wiggins* claim is meritless under § 5(a)(3). *See Haynes v. Quarterman*, 526 F.3d 189, 197 (5th Cir. 2009). The *Haynes* petitioner argued that, while unpresented mitigating evidence would not have made him ineligible for the death penalty, it "could have influenced the jury's discretion" to impose it. *Ibid.* We declined to grant a *Rhines* stay because, under *Blue*, the petitioner had "no meritorious argument that the [TCCA] would allow him to file a successive application for post-conviction relief." *Ibid.*; *cf. Balentine*, 626 F.3d at 856 ("We will not interpret that same perfunctory order as having reached the merits of [the *Wiggins*] issue the Texas court at most has identified it might one day reach."); *Sandoval Mendoza*, 81 F.4th at 482 ("The opportunity to reconsider state court precedent . . . is not in itself enough to grant a *Rhines* stay."). Likewise, Tong does not argue that any mitigating evidence would have rendered him *ineligible* for the death penalty, only that it might have influenced the jury's decision.

\*\*\*

In sum, we hold that the district court did not abuse its discretion in declining to grant a *Rhines* stay.

## B. *Wiggins* claim

Tong next argues that he should be granted a COA to appeal the denial of his *Wiggins* IATC claim. Because no reasonable jurist could debate

that there was no cause to excuse this defaulted claim, we deny Tong's COA request.

While conceding his *Wiggins* IATC claim is procedurally defaulted, Tong argues his state habeas counsel's ineffectiveness provides cause to excuse that default. *See Martinez*, 566 U.S. at 9 (recognizing this "narrow exception" to usual rule that habeas counsel's error cannot excuse default); *see also Trevino I*, 569 U.S. at 428 (holding the *Martinez* exception applies to Texas's post-conviction system). Accordingly, Tong must show state habeas counsel's deficient performance prejudiced him under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Martinez*, 566 U.S. at 14. He must also show that the underlying IATC claim is "substantial," meaning it "has some merit." *Ibid.*; *Trevino I*, 569 U.S. at 423. The district court denied a COA on this latter ground, ruling that Tong's IATC claim lacked merit. Tong's trial counsel, the court noted, "retained professional investigators, conducted interviews with Tong and members of his family, and retained appropriate experts to assist in the preparation of Tong's mitigation case." So, any putative error by state habeas counsel could not excuse the default. *Cf. Trevino v. Davis* (*Trevino II*), 861 F.3d 545, 549 (5th Cir. 2017) ("assum[ing], without deciding" that state habeas counsel was ineffective because the underlying *Wiggins* IATC claim lacked merit).

Tong argues trial counsel should have discovered and presented mitigating evidence concerning "the continued cycle of abuse, abandonment, and sexual abuse that Tong suffered in the decade after he came to the United States as a child." He contends counsel failed to follow the TCCA's admonition that reasonable counsel in capital cases should inquire into possible childhood abuse, and not rely solely on the defendant's own account. Although Tong gave no indication of sexual abuse in his biographical history to counsel, he now argues that a reasonable mitigation investigation would have uncovered the abuse. Trial counsel was inadequate,

he argues, by interviewing only a few family members; by putting on a mitigation case at trial that lasted only half a day; and by requesting investigation funding only shortly before trial.

The State maintains trial counsel's mitigation investigation did not fall below professional standards. It highlights that counsel employed two investigators, who logged over a hundred hours in mitigation investigation, interviewing Tong, relatives, and acquaintances on numerous occasions. Counsel also had a complete report of Tong's educational history, neuropsychologic evaluation, and evaluation from a mitigation expert on the Vietnamese immigrant experience. Counsel then tactically decided which testimony to present based on whether it would support or hinder Tong's mitigation case.

We agree with the district court that Tong's IATC claim lacks merit. At a minimum, the claim fails because Tong has not shown he was prejudiced by counsel's allegedly inadequate mitigation investigation. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). Tong must show that, "under Texas's capital sentencing statute, the additional mitigating evidence is so compelling that there is a reasonable probability that at least one juror could have determined that because of the defendant's reduced moral culpability, death is not an appropriate sentence." *Canales v. Davis*, 966 F.3d 409, 412 (5th Cir. 2020) (cleaned up) (quoting *Kunkle v. Dretke*, 352 F.3d 980, 991 (5th Cir. 2003)). The likelihood of a different result must be substantial, not just conceivable. *Ibid.* (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). To assess prejudice, "we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Ibid.* (quoting *Wiggins*, 539 U.S. at 534).

No. 19-70008

To show prejudice, Tong relies entirely on 2014 affidavits submitted by his cousins, John and Sang, describing sexual abuse. These affidavits are the only evidence that Tong was sexually abused as a child. We cannot consider them, however, because they are not part of the state-court record. The Supreme Court held in *Shinn* that, under 28 U.S.C. § 2254(e)(2), "a prisoner is 'at fault'" for failing to develop the state-court record, "even when state postconviction counsel is negligent." *Shinn*, 596 U.S. at 384.[5] We can expand the state-court record only if the petitioner satisfies § 2254(e)(2)'s stringent requirements. *Ibid.* Tong does not contend he meets any of those requirements, so we cannot consider his cousins' affidavits, or any evidence of sexual abuse contained therein. *See ibid.*

Accordingly, there can be no conceivable, let alone substantial, likelihood that a juror would have changed his mind with respect to Tong's capital sentence. *Cf. Canales*, 966 F.3d at 412. Without any additional mitigation evidence to tip the scales, we have nothing new to "reweigh." *Ibid.*[6] The district court was therefore correct that Tong's underlying *Wiggins* IATC claim was insubstantial, regardless of any deficient

---

[5] In *Mullis*, we explained that *Shinn* bars a petitioner from using "evidence developed in a *Martinez* hearing to assess the [petitioner's] underlying merits claim of [IATC]." *Mullis*, 70 F.4th at 910. In other words, a petitioner cannot factually develop an IAHC claim that is "little more than a Hail Mary pass to get evidence admitted as to the merits of an IATC claim." *Ibid.* That is precisely what Tong tries do here. He admits that he "only raises the ineffectiveness of his state post-conviction counsel as means to permit merits review of [his *Wiggins* IATC claim]." *Shinn* forecloses that attempt.

[6] Furthermore, even if there were additional mitigating evidence to consider, we would have to reweigh it against the extraordinary aggravating evidence presented to the jury about Tong's continued dangerousness. Most importantly, the jury heard that only two days before he murdered Trinh, Tong remorselessly shot a sick toddler and a father after breaking into a home and holding the mother at gunpoint.

performance by his state habeas counsel. As a result, no reasonable jurist could debate that there was no cause justifying the procedural default.

In sum, we deny Tong's request for a COA on this claim.

## C. *Voir dire* **claim**

Finally, we address Tong's claim that the state court *voir dire* violated his right to due process. Tong was granted a COA on this claim. We hold the claim is procedurally defaulted and Tong has shown no cause to excuse the default.

### 1.

At the beginning of jury selection, the trial judge informed defense counsel that Tong was allowed unlimited peremptory strikes. This decision contravened Texas law, which permits only 15 peremptory strikes. *See* Tex. Code Crim. P. art. 35.15(a). After Tong used 25 peremptory strikes and 10 jurors were seated, the State objected and the judge changed course. It announced that Tong had used all available peremptory challenges and, going forward, would have to challenge potential jurors for cause. The judge overruled defense counsel's objection to this change in procedure. Tong wanted to use a peremptory strike on the eleventh juror—Venireperson Sullivan—but the judge ruled Tong was out of peremptory strikes. Tong admits there were no grounds to strike Sullivan for cause.

Tong now contends that the trial court's change in *voir dire* procedure denied him due process under the Fourteenth Amendment. He raised this *voir dire* claim on direct appeal at the TCCA, which rejected the claim as inadequately briefed under Texas Rule of Appellate Procedure 38.1(h). *Tong*, 25 S.W.3d at 710.

We cannot review a habeas claim if the last state court to consider it "expressly relied on a state ground for denial of relief that is both *independent*

No. 19-70008

of the merits of the federal claim and an *adequate* basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (citation omitted). If the state court relied on a procedural rule to deny relief, the rule must be "firmly established and regularly followed." *Id.* at 604–05 (internal quotation marks and citation omitted). We have held that "Texas's rule regarding inadequate briefing in the capital context constitutes a valid procedural bar to federal habeas relief." *Id.* at 607.[7] That rule has been "regularly followed by [Texas] courts, and applied to the majority of similar claims." *Ibid.* (alteration adopted) (citation omitted). Therefore, Tong's *voir dire* claim is procedurally defaulted.

Tong, however, argues the default is excused by his state appellate counsel's deficient performance on direct appeal. *See id.* at 605 (petitioner may overcome independent-and-adequate-state-ground default by showing cause and prejudice) (citations omitted). The Supreme Court acknowledges that ineffective assistance of appellate counsel ("IAAC") for failing properly to preserve a constitutional claim for review in state court can provide cause to excuse procedural default. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). Appellate counsel's performance, however, "must have been so ineffective as to violate the Federal Constitution"—that is, it violated the petitioner's right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Carrier*, 477 U.S. at 488–89).[8]

––––––––––––––––––––

[7] Tong admits *Roberts* controls on this point but "assert[s] this holding is incorrect" for preservation purposes.

[8] Additionally, a claim of IAAC must first "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, 477 U.S. at 489. Tong did so by bringing the IAAC claim before the TCCA in his state habeas petition. Seeing no constitutional error in the trial court's *voir dire* ruling, the TCCA ruled that appellate counsel was not ineffective for failing to adequately brief this issue. Tong does not, however, independently appeal the denial of his IAAC claim. He

**2.**

We must determine, then, whether Tong's state appellate counsel performed deficiently and whether the deficiency prejudiced his defense. *See Coleman*, 501 U.S. at 752 (citing *Strickland*, 466 U.S. at 690); *Moore v. Vannoy*, 968 F.3d 482, 488 (5th Cir. 2020). In other words, Tong must show "a reasonable probability that, but for" appellate counsel's inadequate briefing, "the result of [his appeal] would have been different." *Strickland*, 466 U.S. at 694.

The TCCA denied habeas relief on his IAAC claim because Tong did not "demonstrate that any of the jurors who served during his capital murder trial were not qualified" or could be "subject to a challenge for cause." Moreover, Tong failed "to show that the trial court erred in its *voir dire* process or that the *voir dire* process harmed the applicant." Tong argues, to the contrary, that he showed prejudice because an adequately briefed *voir dire* claim would have been a "dead-bang" winner on appeal.

We disagree. Criminal defendants have the right to trial by an impartial and competent jury, a right protected by the *voir dire* process. *See* U.S. CONST. amend. VI; *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 220 (2017). It is the trial judge's province to conduct jury selection and seat an impartial jury. *Skilling v. United States*, 561 U.S. 358, 386 (2010). Because peremptory challenges "are not required by the Constitution," it is "for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988). Absent a showing of juror bias, there is no federal constitutional concern regarding deprivation of peremptory challenges. *See*

---

instead addresses IAAC simply as a means to address the merits of his underlying *voir dire* claim. We therefore do not address the TCCA's ruling on his independent IAAC claim.

*Rivera v. Illinois*, 556 U.S. 148, 157 (2009). "[T]he mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id.* at 158. The Due Process Clause is concerned only with "the fundamental elements of fairness in a criminal trial," not "meticulous observance of state procedural prescriptions." *Ibid.* (citation omitted).

Tong fails to show that the *voir dire* in his state trial implicated any due process concerns. The Supreme Court's decisions in *Rivera* and *Skilling* show why this is so. In *Rivera*, even where the trial court seated a juror over the defendant's peremptory challenge—a decision which "was at odds with state law"—there was no constitutional violation because the defendant could not point to a single "biased juror" who sat. *Id.* at 159–60 (citation omitted). The Court stated: "If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern." *Id.* at 157. Similarly, in *Skilling*, the defendant complained that he would have struck six more jurors "had he not already exhausted his peremptory challenges" provided by the trial court. 561 U.S. at 397. The Supreme Court found no grounds to reverse the guilty verdict because the defendant could not "establish that a presumption of prejudice arose or that actual bias infected the jury that tried him." *Id.* at 398.

Tong cannot overcome these precedents. He feebly argues that he was prejudiced because one cannot know how *voir dire* would have played out had the judge followed Texas's rules on peremptory strikes. That is pure speculation. Tong, moreover, ignores that the judge's error *benefited* him by giving him 10 extra peremptory strikes.

More importantly, Tong fails to identify any biased juror seated as a result of the change in procedure. *See Skilling*, 561 U.S. at 398. The only juror on whom he wanted to use a peremptory strike—Sullivan—was by Tong's

own admission neither biased nor subject to for-cause challenge. He argues only that defense counsel was concerned with some of her "troubling" *voir dire* responses. But he fails to explain why such concerns rise to the level of a due process violation.

In sum, Tong fails to show that, even if his *voir dire* claim had been properly briefed, the TCCA would likely have ruled in his favor on direct appeal. *See Strickland*, 466 U.S. at 694; *Moore*, 968 F.3d at 489–90. As a result, Tong cannot show cause to excuse the procedural default of that claim.[9]

## IV. Conclusion

The district court's order denying Tong's request for a *Rhines* stay is AFFIRMED. Tong's motion for an additional COA on his *Wiggins* claim is DENIED. The district court's judgment denying Tong a writ of habeas corpus on his *voir dire* claim is AFFIRMED.

---

[9] Tong also tries a last-ditch argument that his sentence should be vacated because the trial court's *voir dire* ruling was a structural error. We need not address this argument because, even assuming structural error (which we do not decide), Tong must still show cause to excuse his procedural default, which he fails to do. *See, e.g.*, *McCoy v. United States*, 815 F.3d 292, 295–96 (7th Cir. 2016) (requiring § 2255 petitioner to demonstrate cause and prejudice to excuse procedural default of a claim of structural error); *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) ("Habeas petitioners must *additionally* show 'actual prejudice' to excuse their default—even if the error that served as the 'cause' is a structural one that would require a new trial."); *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) ("The Supreme Court has recently detailed the circumstances necessary to bypass a state-law procedural default in a § 2254 petition, and 'structural error' is not listed among them." (citing *Coleman*, 501 U.S. at 750)).